THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HARRY SHAPOLSKY, Appellant.

First Department, May 12, 1959.

*Harris B. Steinberg* for appellant.

*Peter Preiser* of counsel (*Richard G. Denzer* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

STEVENS, J. This is an appeal from a mandate of conviction of criminal contempt of court after a hearing pursuant to section 750 (subd. A, pars. 3, 4) of the Judiciary Law.

In September, 1957, an investigation was being conducted by the Grand Jury to determine if there existed a conspiracy to commit the crime of bribery of public officers and the taking of unlawful fees. In the course of the investigation this appellant was subpoenaed to appear as a witness. When he appeared, immunity was not conferred. The questioning was very limited in scope.

Thereafter he was served with a subpoena duces tecum to appear and produce certain records before the Grand Jury dealing with some 30-odd corporations. One of these corporations was 76 Monroe Corp. The witness produced certain records including books, records, cancelled checks, etc., of 76 Monroe Corp. which related to an account in the Chemical Corn Exchange Bank.

It was ascertained that the corporation maintained two other accounts which were in the Trade Bank and Trust Co., and the Manufacturers Trust Co. Accordingly, on March 13, 1958, the appellant witness was served with a subpoena duces tecum, directing him, as president of 76 Monroe Corp., to produce all books and records, including cancelled checks, bank statements and checks of the two accounts. The People demanded that the witness appear personally with the records for the period January 1, 1954 to February 28, 1958.

When the witness appeared on March 14, 1958, he, through his attorney, insisted that he had theretofore turned over the records enumerated in the subpoena duces tecum. This contention was based upon the language of a receipt given for books

which had been delivered. However, the receipt did not include the desired records and the court so found.

The witness was then directed to appear before the Grand Jury on April 8, 1958, and produce the records heretofore referred to. On April 8, the witness appeared, testified and produced additional records but some were still missing. Pursuant to a further direction of the court, the witness appeared on April 16, 1958 with other documents including certain recapitulation sheets. From the record it appears that all papers enumerated in the subpœna duces tecum were produced except the check stubs and check stub books of Trade Bank and Trust Co. for 1954, and the check stub books of Manufacturers Trust Co. for the first four months of 1954, though the cancelled checks and bank statements for that period were produced.

The court found (though not in the order listed here) that the witness committed criminal contempt in that (1) the witness failed to produce certain original books and records pertaining to these bank accounts for the period January 1, 1954 to February 28, 1958 for 76 Monroe Corp., which the court found and determined were in existence on March 13, 1958, and in the custody of the witness; (2) the witness failed to produce the check stubs, check stub books of 76 Monroe Corp., for 1954 in the Trade Bank and Trust Co.; (3) the witness failed to produce the check stubs of 76 Monroe Corp. in the account of Manufacturers Trust Co. from January 1, 1954 to April 30, 1954. The court found that such refusal or failure was willful, unlawful, contumacious and contemptuous. The witness was sentenced to 30 days in the workhouse and a fine of $250. In default of payment an additional 30 days were directed to be served.

A certificate of reasonable doubt was granted by the Supreme Court.

The appellant now urges (1) there was no proof beyond a reasonable doubt that he was willfully disobedient to the court's lawful mandate. He contends that the People did not meet the burden of proof imposed upon them; that his constitutional rights were violated when he was compelled to appear before the Grand Jury and testify and that no "Lawful Mandate" of the court was violated. Appellant claims (2) the mandate of commitment is insufficient on its face because it does not set forth the "particular circumstances" of the offense.

The respondent asserts (1) the appellant's willful resistance and disobedience was proved beyond a reasonable doubt, and (2) deny that his constitutional rights were violated. The

respondent contends (3) that the mandate violated was the court's lawful mandate and that the mandate of commitment was sufficient.

Admittedly the check stub books and check stubs referred to in (2) and (3) were not produced. That aspect of this matter will be discussed more fully hereafter.

The court found that the books and records referred to in (1) were in existence, in the custody of the witness and were not produced.

The witness testified the " original records " as to the source of the deposits, etc. which the People sought in fact never existed. " These accounts of the Trade Bank and the Manufacturers Trust Co. were used just for the office for exchange accounts. Those were my personal accounts, and that is why there was never no records." " I never had those records that you are talking about  *  *  *. You have all my records." All of the checks and bank statements for the period in question were produced.

Against this the People offered the testimony of an expert witness, a member of the District Attorney's staff who gave an " educated surmise " that " some record should be available." He could not swear that such records were in existence on March 13, 1958. The People admitted that they had no actual knowledge of the physical existence of these records, and argued " the fair assumption is that any honest corporation should be expected to maintain the records of transactions had with each of these accounts "; that the witness had not given any satisfactory explanation but had maintained a brazen silence as to such records. Further, " It seems to me that he has got to have some books and records, if the business is run in any sane fashion, concerning these accounts." The People had not been told or even heard of the existence of any such records.

It is elementary that this proceeding being criminal in character, the guilt of the witness must be proved beyond a reasonable doubt. The presumption of innocence is a safeguard redounding initially to his benefit and prevailing until the requisite standard of proof is adduced when a contrary conclusion or determination prevails.

" The law of criminal contempt is clear that no individual may refuse to surrender *existing* documents of a corporation or association *if they be within his control.*" (Emphasis supplied.) (*United States* v. *Patterson,* 219 F. 2d 659, 660.) In that case the court, in reversing the conviction for criminal contempt, pointed out that the defendant's possession of the

records had been interrupted by his jail sentence, and that even when not in jail the records "were never in the exclusive physical custody of Patterson" (p. 662).

In *United States* v. *Johnson* (247 F. 2d 5) to which our attention is directed, the court held that the evidence sustained the adjudication of contempt. In this case, as in the *Patterson* case (*supra*) there was ample undisputed evidence and positive proof that the records referred to in the subpœna duces tecum had been in existence at one time.

In the *Johnson* case, the court recognized that there was a statutory requirement for the preservation of corporate records upon dissolution of the corporation. The court considered that fact with other proof offered and concluded there was sufficient to support a determination that such books and records were in existence when the subpœna was served and could have been produced by the defendant. (*United States* v. *Johnson, supra.*)

In the case before us no positive or sufficient proof was adduced to show the "original records" sought ever existed or had been in the witness' possession. Speculation, surmise, deduction, cannot supplant the requisite proof, nor serve as a substitute in meeting the obligation imposed by law. Before there can be a default in production or willful disobedience, proof of existence as well as ability to produce must be shown. "That fact could not be left to inference or conjecture. The proof must show beyond a reasonable doubt that he had willfully refused to do what the court directed. He could not willfully refuse unless he had the power to comply with the direction contained in the order. Therefore, before he could be punished for not producing the book in question, it was necessary to show that he could produce it \* \* \* He could not be required to perform an impossibility \* \* \* Even if the court did not give weight to his testimony, the case was left without any satisfactory evidence that the appellant had possession of the book, and the fact which justified the punishment was unproved." (*Matter of Wegman's Sons,* 40 App. Div. 632, 633.) Compare *United States* v. *Bryan* (339 U. S. 323) where there was no dispute as to the existence of the records, but an intentional default by the defendant on other grounds.

The observation that any honest business would keep records, or that such records are essential in order to operate, if this business is to be run in a sane fashion, loses much of its force and becomes of questionable applicability in light of the charges involved here, i.e., that this was a dishonest business.

We now turn our attention to items (2) and (3).

The checks and bank statements for the period of the missing stubs were produced and the check stubs and check stub books for these accounts for the other periods of time under investigation were produced also.

It is essential that the missing documents be material and relevant to the inquiry, that their nonproduction tend to impede or obstruct the investigation, and also that it be shown, since these documents unquestionably were at one time in existence, that they were in existence when the subpœnas were served and could have been produced by the witness.

The fact that the documents were once in existence and in the possession or under the control of the witness might create a presumption of continued existence and control sufficient to obligate the witness to come forward and show that he in good faith attempted to comply or require him to give a reasonable explanation for the nonproduction of the records. '' The presumption is thus no more than a common-sense inference, as strong or as weak as the nature of the surrounding circumstances permits. Brune v. Fraidin, 4 Cir., 149 F. 2d 325.'' (*United States* v. *Patterson,* 219 F. 2d 659, 661, *supra.*)

The period under investigation for which the witness was directed to supply records was from 1954 to 1958. The documents missing for the most part represent the initial period of that time. Examination of the check stubs and check stub books produced, and which were kept prior to the institution of the investigation, do not contain sufficient data in themselves or by reference to the checks to enable a determination of the source of the funds or the ultimate recipient of the same. In content they are mostly in accord with the checks which were made available. They would hardly support an inference of willful disobedience because of the failure to produce the missing stubs.

The explanation given by the witness for the nonproduction of the check stubs and check stub books was that during that time the corporation used small check books. (A comparison of the checks gives some support to this statement.) The witness testified that he had searched but could not find the missing stubs and stub books. It is true that the witness on an earlier appearance had professed inability to locate certain records which were produced later.

The court here could conclude that the witness lied and committed perjury. Perjury may constitute criminal contempt as well. (*Matter of Finkel* v. *McCook,* 247 App. Div. 57, 62.) But there must be an added element of deliberate obstruction for perjury to be criminal contempt. Was the explanation an

obvious subterfuge or perjury, or so evasive as to be a transparent sham, which, designedly, blocked or obstructed the investigation? Could the People rest upon the inference of continued existence and continued possession, without more, despite the lapse of three to three and one-half years? On the specific evidence in the case the answers must be in the negative. Nothing was shown to indicate that the stubs and stub books were maintained indefinitely beyond the period of utilization. Nor was there any statutory requirement for preservation of these records as existed in *United States* v. *Johnson* (*supra*). Here the witness is charged with "willfull refusal" and willful disobedience to the court's mandate. The issue of materiality is involved because the refusal or disobedience must be obstructive.

The People, by extrinsic evidence or independent proof, are required to show that the records were in existence when the subpœna was served. The inference of continued existence and continued possession weakens with the passage of a substantial period of time unless something be shown to revitalize it, or attendant or surrounding cricumstances reasonably lead to the conclusion that the records exist and can be produced. When such occurs the witness must produce or reasonably account for the absence of the books. Here the inference alone is insufficient to establish the fact in light of the circumstances referred to. While there are principles applicable generally to contempt cases, each must be decided upon the basis of facts peculiar to it.

"An 'answer' considered in relation to other answers of the same witness may be so absurd, deceptive and prevaricated to such an extent that it amounts to a refusal to answer." (*Matter of Finkel* v. *McCook*, 247 App. Div. 57, 62, *supra*.) "'An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is, then, the characteristic upon which the power to punish for contempt must rest. This being true, it follows that the presence of that element must clearly be shown in every case where the power to punish for contempt is exerted — a principle  *  *  * that in order to punish perjury in the presence of the court as a contempt there must be added to the essential elements of perjury under the general law the further element of obstruction to the court in the performance of its duty.'" (*Matter of Finkel* v. *McCook*, *supra*, p. 63.) (Accord, *Matter of Steingut* v. *Imrie*, 270 App. Div. 34, 40; cf. *Matter of Spector* v. *Allen*, 281 N. Y. 251; *Matter of Bleakley* v. *Schlesinger*, 294 N. Y. 312

[a commitment under Civil Practice Act, § 406, where books admittedly in existence and in recent possession of witness]; *Swetnick* v. *Klein,* 246 App. Div. 261.)

"We are not unmindful of the public interests, of the insistent hope and need that the ways of bribers and corruptionists shall be exposed to an indignant world. Commanding as those interests are, they do not supply us with a license to palter with the truth or to twist what has been written in the statutes into something else that we should like to see. Historic liberties and privileges are not to bend from day to day ' because of some accident of immediate overwhelming interest which appeals to the feelings and distorts the judgment ' (HOLMES, J. in *Northern Securities Co.* v. *United States,* 193 U. S. 197, 400), are not to change their form and content in response to ' hydraulic pressure ' (HOLMES, J., *supra*) exerted by great causes." (CARDOZO, Ch. J., *Matter of Doyle,* 257 N. Y. 244, 268.)

We should be extremely reluctant to burn the barn of legal safeguards however laudable the ultimate objective; or by a strained and torturous construction of law breach the dike of legal requisites, in the sense of sufficiency of proof, in order to avoid frustration of effort or insure accuracy of aim.

The People have not proved beyond a reasonable doubt that the claimed original records ever existed, or even produced substantial evidence of that fact. As to the check stubs and check stub books, the evidence is insufficient to show such recent possession and control by the witness as to warrant an inference of continued existence, or evidence of existence and control at the time of the service of the subpœna as to be proof beyond a reasonable doubt of willful disobedience thereby warranting total rejection of the defendant's explanation as unreasonable. (Cf. *Watertown Paper Co.* v. *Place,* 51 App. Div. 633.) The People have not successfully met the burden of proof imposed upon them. Such check stubs and check stub books as are available, which were made prior to the investigation, hardly tend to the conclusion that the missing documents are obstructive or support the determination of willful resistance and intentional disobedience.

In light of the determination reached it is unnecessary to consider the other contentions of the appellant.

The order appealed from should be reversed on the facts and on the law and the mandate vacated.

McNALLY, J. (dissenting). There was insufficient basis to adjudge appellant in contempt insofar as item C of the mandate was concerned. This item dealt with the books and records,

other than checkbooks, relating to the bank accounts of 76 Monroe Corporation at the Trade Bank and Trust Company and Manufacturers Trust Company for the period from January 1, 1954 to February 28, 1958.

There is sufficient proof in my opinion to sustain the mandate with reference to items A and B. Item A relates to check stubs and check books for 1954 in the Trade Bank and Trust Company for the account of 76 Monroe Corporation. Item B relates to check stubs in respect of the account of Manufacturers Trust Company from January 1, 1954 to April 30, 1954 maintained by 76 Monroe Corporation. There was no dispute that such check stubs and check stub books originally existed. In view of the fact that the appellant twice falsely testified before the Grand Jury that he turned over all the checks and check stubs, and when subsequently directed to so do by the court produced substantially all the missing items, it was within the competence of the learned trial court to find, in effect, that this witness had failed to give a reasonable explanation of his inability to produce the records aforesaid. (*Nilva* v. *United States,* 352 U. S. 385, 395; *Matter of Bleakley* v. *Schlesinger,* 294 N. Y. 312, 317, 318.)

The mandate should be modified by striking therefrom item C, and otherwise affirmed.

BREITEL, J. P., RABIN and BERGAN, JJ., concur with STEVENS, J.; McNALLY, J., dissents and votes to modify, in opinion.

Order and mandate of commitment reversed on the facts and on the law; the mandate vacated and the determination of the Court of General Sessions annulled.