(November 10, 1988)

■ In the Matter of GRAND JURY SUBPOENA DUCES TECUM SERVED UPON MORANO'S OF FIFTH AVENUE, INC., et al., Appellants. ROBERT MORGENTHAU, as District Attorney of the County of New York, Respondent.—Order and two orders and judgments (one paper each) of the Supreme Court, New York

County (Brenda Soloff, J.), entered on April 28, 1987, December 4, 1987, and November 20, 1987, which, *inter alia,* adjudged Morano's of Fifth Avenue, Inc. and Joseph Morano, its president and sole shareholder, guilty of criminal contempt (Judiciary Law § 750), fined each $250 and sentenced Joseph Morano to a term of imprisonment of 30 days, unanimously reversed, on the law, and the criminal contempt motions denied, without costs.

These contempt proceedings arose out of a sales tax investigation by the New York State Department of Taxation and Finance into the handling of out-of-State sales by Morano's of Fifth Avenue, Inc. (Morano's), a retail art and jewelry boutique in Manhattan. Morano's conducts a substantial mail-order business in addition to its direct sales. More than half of the merchandise sold by Morano's is shipped out-of-State and is thus exempt from New York sales tax. This investigation was undertaken contemporaneously with the investigation of Cartier, Tiffany, and Van Cleef & Arpels.

The investigation has followed a tortuous course from successive audits by the Department through the current proceedings brought by the District Attorney in Manhattan. Initially in 1983, auditors for the Department were granted full access to Morano's corporate records of out-of-State sales, and conducted an audit of the period from March 1, 1980 through November 30, 1982. Using the month of September 1982 as a test period, the Department's auditor informed Morano's outside accountant that the out-of-State sales appeared to be documented.

Several months after that audit was completed, a Department auditor returned to Morano's and again asked for access to the same corporate records of Morano's for the purpose of obtaining names and addresses of out-of-State customers in order to contact them and corroborate the shipping documentation. On the advice of counsel, Morano's refused to permit the auditors to transcribe customer information, but according to counsel for Morano's, the auditors were permitted full access to Morano's records for the purpose of conducting an audit. Appellants' counsel states that negotiations were undertaken to attempt to find a way to verify the out-of-State sales that would not have the potential of scaring away customers, but to no avail. The Department then levied a $375,000 sales tax deficiency against Morano's, essentially disallowing exemption from sales tax on all of Morano's out-of-State sales for the period. According to counsel for Morano's, an Administrative Hearing Officer vacated the assessment as without

legal basis, and the Department appealed that determination. The record does not disclose any outcome of that appeal.

Again in 1985, the Department sought access to Morano's corporate records for the purpose of conducting a sales tax audit for the period from December 1, 1982 to May 31, 1985. After Morano's refused to allow the auditor to copy the names and addresses of out-of-State customers for the purpose of official verification, the matter was referred to the Manhattan District Attorney.

On March 26, 1986, a Grand Jury subpoena duces tecum naming only the corporate entity of Morano's was served upon Joseph Morano as president of Morano's. The subpoena required production on April 16, 1986 of eight categories of documents, including substantially all of Morano's records relating to sales, shipping, customers and sales tax for the period from September 1, 1981 through November 30, 1985. Because of the engagement of the Assistant District Attorney assigned to the matter in a prolonged trial, compliance with the subpoena duces tecum was postponed until March 16, 1987. By order entered April 28, 1987, the IAS court denied Morano's motion to quash or modify the subpoena and directed Morano's to comply with the subpoena. After this court denied Morano's application for interim relief in connection with its motion for a stay pending appeal, Morano's produced what it represented were all of the subpoenaed documents in its possession on May 12, 1987.

After reviewing the documents produced, the District Attorney determined that certain categories of documents had not been produced, and applied to the court for relief. On August 21, 1987, the IAS court signed an order directing both Morano's and Joseph Morano to show cause why they both should not be held in criminal and civil contempt for failing to comply with the subpoena duces tecum. The order provided that service upon counsel for Morano's would constitute service upon Morano's and Joseph Morano. On August 31, 1987, the IAS court made an order of reference to Justice George F. Francis to hear and determine the limited issue of whether items not produced but called for in the subpoena were in existence and under the control of appellants on the date the subpoena was served.

Justice Francis conducted several days of hearings on the limited issue. The People's witnesses included an investigator from the Department, Morano's outside accountant, an accountant retained by an insurer to investigate a burglary loss

claim made by Morano's, an accountant in the employ of the District Attorney's office, and the detective who investigated the burglary report. The testimony established that sales invoices, which, along with shipping documents were deemed crucial to the verification program, as well as other requested documents did at one time exist. The testimony also presented appellants' claim that some of the records were delivered to outside adjusters or attorneys in the dispute over the insurance coverage for the burglary claim and that some of the records may have been stolen in a burglary. Also before Justice Francis was a transcript of Joseph Morano's deposition testimony in the insurance coverage litigation in which he testified that sales invoices were routinely discarded after a year. Justice Francis strictly limited the admission of evidence at the hearings to the narrow question of whether the documents existed at the time of service of the subpoena. Appellants were not permitted to present evidence on any other issue bearing on the contempt proceedings.

Justice Francis determined that many of the documents claimed by the People to have been withheld were in fact in existence and under the control of appellants when the subpoena was served. He also found that many of the documents also did not exist at that time. Based entirely on the findings of Justice Francis, the IAS court held that Morano's and Joseph Morano willfully disobeyed both the Grand Jury subpoena and the court's order of compliance, that Joseph Morano was the custodian of the records, and that Joseph Morano failed to comply with the April 28, 1987 order that directed Morano's to comply with the subpoena. The court held appellants in criminal contempt but denied the motion to hold them in civil contempt.

In addition to their contention that the District Attorney is prosecuting Morano's at the Department's behest in the guise of a phantom Grand Jury (one willing to wait a year while an assistant is in a prolonged trial), appellants submit jurisdictional and due process arguments which we find dispositive. While appellants' claim that the Grand Jury process is being abused is troubling, we find the record insufficient to support the argument, and do not reach this issue. Appellants' position is well taken that a better procedure would have been for the Grand Jury to require the personal appearance of the custodian of the corporate books and records. This would have obviated some of the jurisdictional problems.

It is well established that a criminal contempt mandate can only be rendered in a special proceeding, which requires

personal service with equal dignity to that required of a summons. *(Matter of Murray,* 98 AD2d 93, 98.) Failure to personally serve the alleged contemnor is a jurisdictional defect requiring reversal. *(Lu v Betancourt,* 116 AD2d 492, 494; *People v Balt,* 34 AD2d 932.) Here, the order to show cause on the contempt application authorized service on counsel for Morano's, which is only sufficient for civil contempt. *(See,* Judiciary Law § 761.) At the hearing on the contempt motion, the Assistant District Attorney stated that "to take a non-issue out of the case, we served Mr. Morano a copy of the order to show cause personally". Other than this representation, the record is devoid of any proof that either Morano's or Joseph Morano was personally served with the criminal contempt application as required by law. Equally disconcerting is the District Attorney's position that Joseph Morano can be held in criminal contempt for willfully violating the order to comply, dated April 28, 1987, to which, like the subpoena duces tecum, he is not even a party, especially where there is no proof in the record that Morano was custodian of the records. Rather, the record shows that Maria Zinner was the custodian.

Putting aside the jurisdictional issues, we reverse both judgments on the merits. The People failed to meet their burden of proving beyond a reasonable doubt that either of the appellants willfully disobeyed the court's order to produce all the documents called for in the Grand Jury subpoena duces tecum. (Judiciary Law § 750 [A] [3]; *see, Matter of McCormick v Axelrod,* 59 NY2d 574, 583; *People v Shapolsky,* 8 AD2d 122.) Based entirely upon Justice Francis's finding that subpoenaed documents not produced did exist at the time the subpoena was served, and upon colloquy of counsel, the IAS court found both appellants in criminal contempt, fined both the corporation and Joseph Morano, and sentenced Joseph Morano to a term of imprisonment of 30 days. Yet neither before Justice Francis nor the IAS court was any evidence of willfulness presented by the People. Nor was it proved that Joseph Morano in any way "participated in the willful disobedience of the order." *(Citibank v Anthony Lincoln-Mercury,* 86 AD2d 828, 829.)

For a finding of criminal contempt to be sustained a hearing of broader scope than the limited reference here directed by the IAS court must be conducted to allow a full development of all relevant evidence. *(Matter of Ross v Sherwood Diversified Servs.,* 88 AD2d 936.) Appellants were entitled to a trial on the issue of willful disobedience before a finding of criminal

contempt could be properly made. Willful disobedience is a factual issue upon which appellants should have been permitted to present evidence. This opportunity was repeatedly denied them in the hearings on the limited issue referred to Justice Francis. Moreover, in those hearings the People failed in their obligation to prove "by extrinsic evidence or independent proof * * * that the records were in existence when the subpoena was served." *(People v Shapolsky, supra, 8 AD2d, at 128.)* Indeed, with respect to the shipping records, the testimony was equivocal whether any documents were retained other than credit card receipts that were produced. As to the critical sales invoices, which Joseph Morano testified were routinely discarded after a year, the passage of time weakens the presumption of their continued existence. *(See, People v Shapolsky, supra,* at 128.) While the testimony involving burglars stealing old records may be implausible, its weakness is not affirmative proof. As the Court of Appeals stated in annulling a civil contempt finding, "[h]owever one may be inclined to agree with the trial court's conclusion that defendant's conduct is suspect and [the] testimony incredible * * * such visceral reactions cannot be a substitute for evidence." *(Pereira v Pereira, 35 NY2d 301, 309.)* In the present context, where the issue is not civil but criminal contempt, a higher standard must be met. Nor can we agree with the position that by appearing, appellants waived the jurisdictional objection to the criminal contempt proceeding. Initially, appellants were charged with both civil and criminal contempt, though the civil contempt motion was denied. By appearing, where the civil contempt motion was properly served, appellants did not waive their jurisdictional objection to the criminal contempt motion. *(Lu v Betancourt, supra.)* Concur—Murphy, P. J., Carro and Rosenberger, JJ.

Milonas J., concurs in a separate memorandum as follows: Although I agree that the adjudications of contempt should be reversed and leave granted to the People to seek new subpoenas from an appropriately convened Grand Jury, I consider it unnecessary to reach all of the issues discussed by the majority.

In my opinion, there is an obvious procedural defect involved in this matter. On August 31, 1987, the IAS court referred to another Justice the limited question of which, if any, of certain documents designated in the subpoena existed in the possession or under the control of Morano's of Fifth Avenue and Joseph Morano on the date that the subpoena was served. Following a hearing which was thereafter con-

ducted in connection with this matter, the court issued findings in which he stated in conclusory form that some records did, in fact, so exist and that others did not. Based upon those findings, the IAS court held both the corporation and Joseph Morano in criminal contempt. However, regardless of whether the proof elicited at the hearing was sufficient to support the determination by the Hearing Judge, the fact remains that no contempt hearing ever took place. Thus, both appellants were found in criminal contempt despite the People having never been required to demonstrate that the failure to make available the subpoenaed records was the result of willful or contumacious disobedience (see, Matter of McCormick v Axelrod, 59 NY2d 574). Certainly, the fact that specific documents demanded by the subpoena but not produced were determined by one Judge to exist in the possession and control of Morano's of Fifth Avenue and Joseph Morano on the date that the subpoena was served cannot by itself provide justification for another Judge to impliedly conclude, without having afforded either the corporation or Joseph Morano the opportunity to address the issue of whether appellants' conduct was willful. The hearing court, which considered the evidence, never made a finding of willfulness nor was he requested to do so. Consequently, the limited reference directed here by the IAS court cannot support a determination of criminal contempt.

Yet, notwithstanding the fatal defect in the instant proceeding, I discern no reason not to permit the People to examine those books and records relevant to their investigation of possible sales tax fraud so long as they follow proper due process in the future.