Paul A. Fino, J.
Petitioner landlord, on its own behalf -alxd on behalf of all other persons similarly situated, by order to show cause, seeks a judgment (CPLR art. 78) directing the respondents as administrators and agents of the Housing ánd Development Administration of the City of New York, to issue “ Maximum Base Rent Orders ” (MBR orders) or, in the alternative, to permit petitioner and those similarly situated to immediately charge and collect an additional 7%% of the present rentals for each rent-controlled housing unit owned by them. The petitioner predicates its demand for the relief requested upon allegation that the respondents have wrongfully failed to implement local law 30 of the Local Laws of 1970, which was passed by the New York City Council in July, 1970 and which amended title Y of chapter 51 (§ Y51-5.0 et seq.) of the Administrative Code of the City of New York. Local law 30 specifically provides for a program to adjust the rents of rent-controlled units in the City of New York in designated stages.
The presently contested section of the Administrative Code is Y51-5.0 (subd. a, par. [3]) which provides in part: “ The city rent agency shall establish maximum rents to be effective January first, nineteen hundred seventyrtwo by dividing the maximum gross building rental from all housing accommodations in the property whether or not subject to or exempt from control under this title by the number of such accommodations, after giving consideration to such factors as may be prescribed by formula, such as size and location of housing accommodations and number of rooms. * * * The agency shall report to the council on or before October fifteenth, nineteen hundred seventy-one as to the status of preparation of the formulas necessary to implement the rent adjustments to be effective January first, nineteen hundred seventy-two ”. (Par. [3] of subd. a added by Local Laws, 1970, No. 30, July 10; emphasis added.)
To implement section Y51-5.0 (subd. a, par. [3]) a system for computing new maximum rents was promulgated by the *341 Housing and Development Administration as part of Amendment No. 33 of the Rent and Eviction Regulations of the Department of Rent and Housing Maintenance Office of Rent Control. Section 24 of the Rent, Eviction and Rehabilitation Regulations (added by Arndt. No. 33) entitled “ Maximum Base Rents Effective January 1,1972”, sets forth the formula by which the maximum rents for all rent-controlled units are to be calculated. "While it is possible to compute the maximum base rent of any given rent-controlled apartment by utilizing this formula, due to the complexity of the formula and the large number of rent-controlled apartments involved (over one million) the respondents have assumed the task of calculating the rental adjustments due under the maximum base rent program. The respondents have been utilizing computers to calculate the rent adjustments due, and it is anticipated that the computer program presently under development will be utilized to calculate rent adjustments as long as there are rent-controlled units in the City of New York.
There have admittedly been certain delays in the implementation of the Local Law 30. Although the respondents claim that they have to date issued more than 293,000 MBR orders adjusting the rents for the corresponding' number of apartments, according to the respondents there remain approximately 725,000 MBR orders which have yet to be issued. Of the 725,000 outstanding orders, the respondents indicate that approximately 325,000 will be orders denying any rent increase because of the landlord’s failure to satisfy the necessary prerequisite thereto. Of the remaining orders, nearly all increases will be retroactive to January 1, 1972, the effective date specified by section Y51-5.0 (subd. a, par. [3]) of the Administrative Code.
The respondents claim that the delays have resulted primarily because of (1) the complexity of computerizing the program, (2) the erroneous information supplied by the landlords for the calculation of rent adjustments, and (3) the confusion caused by the temporary imposition of Federal rent controls under the Economic Stabilization Act (84 TJ. S. Stat. 796).
In their affidavit submitted in opposition to .the instant application, the respondents summarize their substantial efforts to implement the maximum base rent program in noting that these efforts have included: ‘ ‘ The development of the MBR system and formulas * * * the gathering of millions of individual items of data from the landlords of buildings applying for MBR; the merging of this data with information from the (manual) records of the Office of Rent Control and the (com *342 puterized) records of the Finance Administration; the creation and execution of a massive and complex program for owner certification of correction of housing code violations and the verification thereof by City housing inspectors and integration into the Maximum Base Rent System; the calculation and issuance of Maximum Base Rents; and the processing of applications challenging the original landlords applications on the Maximum Base Rent Orders.” The respondents note that the cost of the program to date ‘ ‘ far exceeds the $4,603,000 collected in fees [$5 per rental unit] from landlords applying for MBR” and “the total costs of .the MBR program for the period from August 1,1970 to August 31,1972 are now projected at approximately $8,400,000.” The wisdom of adopting a program which has proved so costly and so complex, and which has required hundreds of thousands of man hours of work, is not before the court, and years may pass before it is possible to accurately assess the merits of the MBR program.
While the petitioner, based upon the failure of the respondents to complete the issuance of MBR orders, requests that the court direct the respondents to issue all outstanding orders at once, the petition, perhaps understandably, fails to establish that the respondents are presently capable of obeying such an order. Alternatively, the petitioner suggests that, in the event the court determines that the respondents, although ready and willing, are not able to at once issue the outstanding MBR orders, the court direct the respondents to authorize and allow landlords •to collect the maximum rent increase of 7%%, subject to challenges and rebates where it is subsequently determined that a maximum increase permissible pursuant to local law 30 was actually something less than 7%%.
The petitioner claims that the great majority of the rent adjustments due will equal the maximum 7%% permitted by section Y51-5.0 (subd. a, par. [5]), which provides in part: “ Where a maximum rent established pursuant to this title on or after January first, nineteen hundred seventy-two, is higher than the previously existing maximum rent, the landlord may not collect more than seven and one-half per centum increase from a tenant in occupancy on such date in any one year period ’ ’.
An examination of section Y51-5.0 (subd. a, par. [3]) of the Administrative Code indicates that the mandate therein requires the respondents to “ establish maximum rents to be effective January first, nineteen hundred seventy-two ” (emphasis added), and since nearly all of the outstanding MBR orders when issued will be retroactive to January 1, 1972 (and thus “ effective ” *343 as of that date) the respondents have not violated the mandate of the section.
Section 96 of Statutes (McKinney’s Cons. Laws of N. Y., Book 1) provides: “ A basic consideration in the interpretation of a statute is the general spirit and purpose underlying its enactment, and the construction is to be preferred which furthers the object, spirit and purpose of the statute. ’ ’ (See, also, Williams v. Williams, 23 N Y 2d 592; Matter of Jonathan Logan, Inc. v. Stillwater Worsted Mills, 31 A D 2d 208; Matter of Hennessey v. Farrell, 43 Misc 2d 1045, affd. 19 A D 2d 698.)
The essence of section Y51-5.0 (subd. a, par. [3]) of the Administrative Code is the preparation and utilization of formulas for calculating rent adjustments,-and the section specifically provides that the City Bent Agency “ shall report to the [city] council on or before October fifteenth, nineteen hundred seventy-one as to the status of preparation of the formulas necessary to implement the rent adjustments to be effective January first, nineteen hundred and seventy-two.” Since the respondents are only capable of issuing MBB orders for rental units for which they have completed calculations, pursuant to the formulas adopted to implement rent adjustments due, it is clearly consistent with the mandate of section Y51-5.0 (subd. a, par. [3]) to permit the respondents a reasonable period to complete these calculations. That this period has extended beyond the date from which the adjustments are to be effective (in this case five months) does not in and of itself constitute a violation of the' contested ordinance.
Although there has been no proof that the respondents have been willfully derelict in their duty or have acted unreasonably in implementing the MBB program, especially in view of the complex nature of the undertaking, and although the respondents’ affidavit in opposition to this application states that all outstanding MBB orders will be issued “shortly”, further protracted delay in the implementation of the program will undoubtedly prejudice both the landlords and the tenants of this city. Notwithstanding the retroactive effect to be given to rental increases upon the issuance of MBB orders, the landlords entitled to these increases are being denied utilization of the funds derived from these increases during the period of the delay. This may have a disastrous effect on landlords of rent-controlled property because of their union contracts and other commitments. Furthermore, tenants subject to these increases will eventually be required to pay the continually accumulating *344 amount of the unpaid rental increases retroactive to January 1, 1972.
In view of the prejudice which would be caused to landlords and tenants by further extended delay in the issuance of the outstanding MBR orders, the unsupported statement by the respondents that these orders will be issued “ shortly ” is meaningless. Within the context of bureaucratic action “ shortly” is a totally relative term, which may include periods from a day to a decade. Accordingly, application is granted to the extent of directing the respondents to issue the outstanding MBR orders by June 21, 1972, and as to those orders which are not issued by June 21, 1972, the petitioner landlords in those cases will be authorized and permitted to collect the maximum 7%% rent increase subject to being rebated if the respondents should subsequently determine that the maximum increase permissible pursuant to local law 30 was actually less than the said 7%%.