Vincent A. Lupiano, J.
Motions numbered 38 and 39 on the calendar of February 14, 1973 are consolidated and disposed of as follows:
Before delineating the nature of the instant applications before this court, a summary of the prior litigation between the parties is warranted. Petitioner, Benson Realty Corp., a landowner suing on its own behalf and on behalf of all other persons similarly situated, by order to show cause dated March 28, 1972 and by petition dated and verified March 27, 1972, commenced an article 78 proceeding in the nature of mandamus to compel respondents to issue “ Maximum Base Rent Orders ” (hereinafter “ MBR orders ”) or, in the alternative, to permit petitioner and those similarly situated to immediately charge and collect an additional 7%% of the then present rentals for each rent-controlled housing unit owned by them. The respondents designated in the said order to show cause and petition are Albert A. Walsh, Administrator of the Housing and Development Administration of New York City; Benjamin Altman, Commissioner of the Department of Rent and Housing Maintenance of New York City; Robert C. Rosenberg, Assistant Administrator of the Housing and Development Administration of New York City; and the City Rent Agency. In its memorandum decision (71 Misc 2d 339), dated May 25, 1972, resolving this article 78 proceeding, the court (Fino, J.) observed that paragraph (3) of subdivision a of section Y51-5.0 of the Administrative Code of the City of New York provides in part *890 that the ‘ ‘ city rent agency shall establish maximum rents to be effective January first, nineteen hundred seventy-two * * * The agency shall report to the council on or before October fifteenth, nineteen hundred seventy-one as to the status of preparation of the formulas necessary to implement the rent adjustments to be effective January first, nineteen hundred seventy-two.” (Added by Local Laws, 1970, No. 30 of City of New York.) The court acknowledged that respondents have assumed the task of calculating the rental adjustments due under the Maximum Base Rent program, and that respondents claim that there remain approximately 725,000 MBR orders which have yet to be issued. It was further stated (pp. 342-344) that “ since nearly all of the outstanding MBR orders when issued will be retroactive to January 1, 1972 (and thus ‘ effective ’ as of that date) the respondents have not violated the mandate of the section * * * Although there has been no proof that the respondents have been willfully derelict in their duty or have acted unreasonably in implementing the MBR program * * * and although the respondents’ affidavit in opposition to this application states that all outstanding MBR orders will be issued * shortly ’, further protracted delay in the implementation of the program will undoubtedly prejudice both the landlords and the tenants of this city * * * In view of the prejudice which would be caused to landlords and tenants by further extended delay in the issuance of the outstanding MBÉ orders, the unsupported statement by the respondents that these orders will be issued 1 shortly ’ is meaningless ”.
Accordingly, the court determined (p. 344) to grant the petition “ to the extent of directing the respondents to issue the outstanding MBR orders by June 21, 1972, and as to those orders which are not issued by June 21, 1972, the petitioner landlords in those eases will be authorized and permitted to collect the maximum 7%% rent increase subject to being rebated if the respondents should subsequently determine that the maximum increase permissible pursuant to Local Law 30 was actually less than the said 71/2%.” This determination was embodied in an order and judgment of the court, dated June 2, 1972, which, inter alia, declared the article 78 proceeding to be a class action.
Subsequently, on petitioner’s application for an order adjudging the respondents in contempt of court for failure to comply with the aforesaid order and judgment, the court (Fmo, J.), by memorandum decision, dated October 6, 1972, held the application in abeyance, and referred the following issues to the Hon. *891 Seymour Bibber, Special Referee of this court, to hear and report together with his recommendations: whether or not the said respondents have complied with the order of this court in issuing the said Maximum Base Rent Orders; whether or not the respondents did, in fact, issue any MBR orders by June 21, 1972, and how many, if any, they have issued to date. The Special Referee has rendered his report, dated January 4, 1973.
Petitioner now moves before this court, Mr. Justice Fino having subsequently resigned from the court, for an order (1) confirming the report of the Special Referee, pursuant to CPLR 4403, and (2) determining the motion to punish respondents for contempt of court (heretofore held in abeyance) by directing that said respondents be punished for their failure to comply with the order and judgment dated June 2, 1972. Respondents move for an order rejecting the Special Referee’s report or, in the alternative, granting reconsideration of the original article 78 proceeding in the nature of mandamus on the ground that this court cannot render a decision and issue an order with respect to the petitioner’s contempt motion because Mr. Justice Fino, who rendered the said order and judgment, and who directed the referral which is the basis of the instant motion, has resigned from the court.
It is initially noted that respondents do not contend that the mandate embodied in the judgment dated June 2, 1972, is void or has been reversed on appeal.
“ Where the court has jurisdiction over the subject matter and the parties and has the authority or power to render the particular order or decree, the fact that such order or decree is erroneous or irregular or improvidently rendered does not justify the defendant in failing to abide by its terms, and his conduct in failing to do so may be punished as for contempt despite the error or irregularity. Error in a judgment or order which is not jurisdictional is to be asserted in the action by a motion to vacate or amend, or by an appeal or other method of direct review, not by a collateral attack in contempt proceedings based upon evasion or disobedience of the judgment or order.” (9 N. Y. Jur., Contempt, § 28). Consequently, the parameters of the instant motions have been set by the prior determinations of the court delineated above.
Reargument of those determinations is not warranted on the basis that the Justice who rendered them has subsequently resigned. Section 7-a of the Judiciary Law provides that “ a civil or criminal action or special proceeding in a court of record is not discontinued by a vacancy or change in the judges of the *892 court * * * 'but it must be continued, heard and determined by the court as constituted at the time of the hearing or determination ”. (See, also, Judiciary Law, § 7-e.) As the petitioner’s motion to punish the respondents for contempt of court was held in abeyance, the determination thereof by this court, at this time, does not under the circumstances herein violate the doctrine that one Judge of co-ordinate jurisdiction should not depart from a ruling or order of a colleague of equal rank in the same case.
Respondents in seeking to have the court reject the Special Referee’s report contend that the report (1) exceeds the scope of the referral, (2) is not supported by the weight of the evidence, and (3) reaches a conclusion contrary to law. Examination of the report in light of all the circumstances herein impels the conclusion that it clearly does not exceed the scope of the referral. The argument that the report is not supported by the evidence is asserted in conclusory fashion, and is not sufficiently demonstrated to warrant the relief requested by respondents. In his report, the Special Referee states that he does not agree with the respondents’ contention “ that the subject June order of the Court gave them alternative rights, that is, the discretion to issue all MBR orders by June 21, 1972, or, in lieu thereof, to issue only interim orders by June 24th to eligible owners. This interpretation, if adopted herein, would render meaningless Justice Fmo’s clear and specific direction ‘ to issue outstanding MBR orders by June 21,1972 ’ ”. This observation meets with the court’s approval. Common sense, reason and logic dictate that the interpretation urged by respondents would emasculate the gravamen of the rationale enunciated by Mr. Justice Fino in his memorandum decision dated March 25, 1972, and subsequently embodied in the June 2,1972 order and judgment. The Special Referee declared: ‘ ‘ The proof adduced before me clearly establishes that respondents failed to issue any MBR orders between June 2 and June 21, 1972, in accordance with Judge Fusro’s order. It is apparent from the evidence that respondents took it upon themselves to conclude it would have been ‘ impossible to issue any substantial number of MBR orders during the 19-day period in question ’ and, therefore, issued none at all (citation). Thus, they merely decided to ignore the specific mandate of the Court in this respect and proceeded, without any attempt to comply with the June 21,1972 deadline, to issue the interim order referred to in the second subject decretal paragraph ”. In light of the history of this, litigation, and viewing the prior decisions and order and judgment of the court *893 with every fair intendment, it is clear that the Special Referee’s report does not reach a conclusion contrary to law. Scrutiny of the respondents’ papers submitted on the instant motions does not compel a different result, rather it supports the report in its critical findings.
Respondents’ key defense to a finding of contempt is,predicated solely upon the ground that they were unable to comply with the court’s mandate, dated June 2, 1972. In this regard, it has been aptly observed that inability to obey the court’s mandate is no defense where such default was occasioned by the acts of the party charged. “As a general rule, the inability to obey of the person accused of disobeying a mandate, is no defense to a proceeding to punish the disobedience as a contempt, except as it may appear that the respondent was not at fault in creating the inability and that he offers to perform to the best of his ability. Thus, inability to obey the mandate is no defense to contempt proceedings where'it is occasioned by acts of the defendant * * * Also, it is no defense that literal compliance is not possible where it is within the power of the party to comply substantially with the order.” (9 N. Y. Jur., Contempt, § 57). The failure to issue the MBRs in compliance with the order and judgment was due, it appears, in large part, to respondent’s own key punch errors, lack of personnel and “ down time” of the computer. Not only is this finding enunciated in the Special Referee’s report, it is implicit in the papers submitted to the court on the instant motions.
In passing, the court notes that where a party interested in the enforcement of a court mandate has by his own act made compliance with such decree legally impossible, the other party to the proceeding may not be punished for contempt. However, the Referee in his report states that although respondents attempted to place the fault for noncompliance on the landowners, no compelling proof was submitted in this regard. Under all the circumstances herein, the inescapable conclusion is that the failure to comply is attributable to administrative failure.
Had there been expedition and closer application, the angry parties who have been registering partisan dissatisfaction and hurt in newspapers and at recent City Council hearings, might now be more composed.
The petitioner’s motion, insofar as it seeks confirmation of the Special Referee’s report, is granted and the respondents’ motion, insofar as it seeks rejection of the said report, is denied. In reaching this result, the court has, as it must, confined itself within the framework of the prior decision and order of Mr. Justice Fino, dated March 25 and June 2, 1972, respectively. *894 Respondents’ alternative request for reconsideration of said decision and order is denied, as no basis warranting said relief has been demonstrated, and such relief would be improper under the circumstances herein.
As described in the Referee’s report, there are approximately 1,054,000 apartments in the MBR system. As of June 2, 1972, respondents had issued some 300,000 MBR “grant orders”. None were issued between June 2 and June 21, 1972, as herein-above mentioned. Between June 21 and December, 1972, an additional 116,000 MBR grant orders and 220,000 denial orders were issued. It is therefore evident that only subsequent to the June 21,1972, terminal date set forth in the order and judgment did the respondents engage in belated attempts to obtain the additional and competent help requisite to proper administration of the MBR program. The June 21, 1972 terminal date cannot under all the circumstances herein be deemed merely suggestive as to when the MBRs enumerated in the court’s prior memorandum decision would issue. Patently, substantial compliance was expected by that date. This did not occur. “ It is civil contempt for a person to disobey a lawful mandate of the court whereby the right or remedy of a party to a civil action or special proceeding pending in the court may be defeated, impaired, impeded, or prejudiced ” (9 N. Y. Jur., Contempt, § 19; CPLR 5104; Judiciary Law, § 753). The law as to contempt applies to public officials, including de facto officers, officers of the court, including attorneys at law, parties to actions, jurors, witnesses, corporations, and to the general public (9 N. Y. Jur., Contempt, §6). “ Wilful disobedience of the court’s mandate is not a requisite of civil contempt” (9 N. Y. Jur., Contempt, § 22). Respondents’ failure to issue any MBRs in the period from June 2, 1972 to June 21, 1972, while not willful in the strictest sense of that term, was not occasioned by mere inadvertence and is, under the circumstances herein, inexcusable.
Section 773 of the Judiciary Law governs the amount of the fine that may be imposed herein. It provides, inter alia, that where actual loss or injury has been produced to a party to a special proceeding, by reason of the misconduct proved against the offender, a fine, sufficient to indemnify the aggrieved party, must be imposed against the offender. Where such actual loss is not shown, a fine must be imposed, not exceeding the amount of the complainant’s costs and expenses, and $250.
Petitioner contends that since this is a class action by virtue of the prior order and judgment of the court, dated June 2,1972, *895 respondents should he (1) fined $2,000,000, the amount collected from the class for the issuance of the MBits; (2) enjoined from demanding and collecting from the class an additional $3 per housing unit ($1,200,000) for the 1973 increase (and be fined an amount equal to that already collected from any member of the class); (3) directed to pay to petitioner’s counsel a reasonable sum as counsel fee, costs and disbursements, in connection with the original article 78 proceeding in the nature of mandamus, and in connection with other litigation involving the interim orders. Patently, the relief sought under (1) and (2) just enumerated is, at this juncture, of a speculative nature and not an appropriate factor in measuring the fine within the purview of section 773 of the Judiciary Law. Indeed, the relief sought under (2) and, in part, under (3) is beyond the scope of the instant motions insofar as it does not relate to and is not embodied in the prior determinations of Mr. Justice Pino. The counsel fee and related costs and expenses incurred in the prosecution of the original article 78 proceeding herein do not constitute an actual loss to petitioner as a consequence of the subsequent contempt. Accordingly, it must be concluded that petitioner has failed to make a sufficient demonstration of actual loss for the purposes of fixation of the amount of the fine under section 753 of the Judiciary Law.
Under these circumstances, the petitioner’s motion for an order adjudging the respondents in contempt of court is granted, and respondents are fined in the amount of the petitioner’s costs and expenses, and $250 in addition thereto. Reasonable counsel fees in this application to punish respondents for contempt may properly be included as an item of “ the 1 complainant’s costs and expenses ’ ” (Bennett Bros. v. Floyd Bennett Farmers Market Corp., 16 A D 2d 897 [1st Dept., 1962]). “ Counsel fees in this kind of proceeding are in the nature of indemnification for expense incurred ” (Bennett Bros. v. Floyd Bennett Farmers Market Corp., supra, p. 898 [dissent]). Therefore, leave is granted to petitioner to make proof of its expenses in addition to the costs allowed.