■ SELMA MARGULIES, Respondent, v. MYRON L. MARGULIES, Appellant.— Order, Supreme Court, New York County, entered March 12, 1973 is modified on the law, the facts and in the exercise of discretion to strike therefrom those provisions directing defendant's civil commitment for contempt of court and to substitute therefor a provision that defendant may purge himself of the contempt by paying a sum of $450, representing the fines previously imposed by court orders or, in the alternative, by appearing in and participating in a Jewish ritual divorce, and as so modified, the order is affirmed, without costs or disbursements. The parties were divorced in June, 1970. Thereafter, certain further disputes developed which were ostensibly settled when the parties stipulated in open court with respect to child visitation rights and the division of certain items of personal property. As part of that stipulation, defendant voluntarily agreed to "appear before a Rabbi to be designated for the purposes of a Jewish religious divorce". Prior to the order appealed from defendant was on two occasions held in contempt and fined therefor, (orders dated June 23, 1972 and October 2, 1972) subject to the provision that he could purge himself of the contempt upon payment of the fines and by appearing before a Jewish court for the purpose of obtaining the divorce. When defendant continued in his refusal to comply with the court's orders, a further motion for contempt was brought. This time defendant was committed to jail for a period of 15 days, again with the opportunity to purge himself of the contempt if he appeared and participated in a Jewish ritual divorce. It is argued that the court was without power to direct defendant to participate in a religious divorce, as such is a matter of one's personal convictions and is not subject to the court's interference. We are told further, that since a Jewish divorce can only be granted upon the representation that it is sought by the husband of his own free will, any such divorce, if obtained under compulsion by the court, would in any event be a nullity. We agree that the defendant may not, under these circumstances, be incarcerated for his failure to honor the stipulation (incorporated into a court order) and accordingly, vacate that portion of the order directing his commitment. However, we believe that the fines imposed upon defendant by the prior orders should stand. Defendant failed to perfect any appeals from the prior orders fining him for his contempt nor did he obtain a stay of the provisions contained in those orders. The initial order was entered upon the parties' open court stipulation concerning the disputes arising after the judgment of divorce, and defendant voluntarily agreed to perform certain acts. The court had jurisdiction over the parties and the subject matter, and even if the orders were erroneous, the defendant was obligated, in the absence of a stay, to obey the court's mandate until vacated or reversed. (See *Burchell* v. *Cimenti*, 38 A D 2d 897; 9 N. Y. Jur., Contempt § 28.) In any event, there was abundant basis upon which to conclude that defendant's behavior was contumacious. Immediately after the open court stipulation was entered into, defendant, who has remarried, and who accepted the benefits of the agreement, disavowed his representations made in open court. At the time when he agreed to participate in the religious divorce he was well aware of the consequences and nature of the act and that it could only be obtained upon his assertion to the rabbinical court that it was being sought of his own free will. Defendant was also well aware that plaintiff could not enter into a

valid remarriage under Jewish law until the "get" had been granted. It is not indicated that any subsequent developments caused defendant to change his mind and upon this record we can only conclude that defendant never intended to carry out the terms of the open court stipulation and that he utilized the court for his own ulterior motives. Such behavior may not be countenanced. Concur — Stevens, P. J., Markewich, Kupferman and Tilzer, JJ., Nunez, J., dissents in the following memorandum: The direction that defendant appear before a Rabbi for the purpose of obtaining a Jewish religious divorce, a "get", contained in the order entered October 28, 1971, is unenforceable. It matters not that defendant consented to its entry. It was for his failure to appear before the appropriate religious authority to obtain the "get" that defendant has been adjudged in contempt three times by the court below. On the first two occasions he was permitted to purge himself by paying fines totalling $450 *and* submitting to a "get". The order appealed from commits defendant to jail for 15 days without any purge provision. The Hebrew divorce has no validity unless the husband's consent is given voluntarily and without coercion or duress. (See 3 Universal Jewish Encyclopedia, p. 578; 6 Encyclopedia Judaica 130.) Had defendant appeared and given his consent to the "get" under threat of imprisonment, the religious divorce thus obtained would have been a nullity. Furthermore, while it is true that defendant did not appeal from the two previous orders adjudging him in contempt, and it is for defendant's failure to do so that the majority is upholding the validity of the order appealed from, it should be noted that he was held in contempt solely for his failure to obtain the "get". Religion, as well as religious laws, ceremonies and procedures are matters of individual conscience. The constitutional and traditional complete separation of church and state is most salutary and desirable. No erosion of this basic concept should be permitted. The original order directing the plaintiff to obtain the religious divorce being improper, the subsequent orders did not validate it. I am certain my brethren would not enforce an order directing a litigant to go to confession or to say six Our Fathers and four Hail Marys. I would reverse and deny the motion to punish. Settle order on notice.