Susan R. Avitzur, Respondent, v Boaz Avitzur, Appellant.

Third Department, April 8, 1982

APPEARANCES OF COUNSEL

*Louis-Jack Pozner* for appellant.

*Lee, LeForestier, Malone, Smith & Hanft (Richard A. Hanft* of counsel), for respondent.

OPINION OF THE COURT

Mahoney, P. J.

Married in a Jewish religious ceremony on May 22, 1966, plaintiff and defendant signed a written agreement known as a "Ketubah" that same day as part of the religious ceremony. On May 17, 1978, defendant obtained a civil divorce in the State Supreme Court on the ground of plaintiff's cruel and inhuman treatment. Desirous of obtaining a Jewish religious divorce, known as a "Get", plaintiff commenced this action in February of 1980 for specific performance of the Ketubah's requirement that defendant appear before a Jewish religious tribunal known as the "Beth Din", which is necessary in order to obtain a

Get. Defendant moved to dismiss the complaint pursuant to CPLR 3211 on the grounds that plaintiff lacked capacity to sue, that the complaint failed to state a cause of action and failed to name certain necessary parties. Plaintiff cross-moved for summary judgment. Special Term denied both motions and this appeal by defendant ensued.

Defendant argues that this lawsuit involves matters which are religious in nature and that it would require an unconstitutional entanglement between church and State for the Supreme Court to assume jurisdiction over the action. Special Term, in rejecting this argument, found no such entanglement. Instead, it viewed the real object of the lawsuit as seeking "a command upon the individual defendant to do what is alleged he agreed to do in advance." We cannot agree. The agreement which plaintiff is attempting to specifically enforce was entered into as part of a religious ceremony and, by its own terms, was "executed and witnessed * * * in accordance with Jewish law and tradition." The State, having already granted the parties a civil divorce, has no further interest in their marital status. It would thus be a dangerous precedent to allow State courts to enforce liturgical agreements concerning matters about which the State has no remaining concern. Viewed in this manner, the cases cited by Special Term in support of its jurisdiction to enforce a Ketubah are inapposite since those cases involved situations where the Ketubah's terms had been incorporated in a subsequent civil agreement (*Margulies v Margulies,* 42 AD2d 517, app dsmd 33 NY2d 894 [stipulation in open court]; *Waxstein v Waxstein,* 90 Misc 2d 784, affd 57 AD2d 863 [separation agreement]; *Matter of "Rubin" v "Rubin",* 75 Misc 2d 776 [written stipulation of settlement]; *Koeppel v Koeppel,* 138 NYS2d 366, affd 3 AD2d 853 [separation agreement]). Only the unreported case of *Stern v Stern* (Supreme Ct, Kings County, Aug. 8, 1979, HELD, J.) has granted specific performance of the Ketubah itself, as distinguished from the subsequent ratification of its provisions. We decline to follow this decision.

Moreover, assuming, *arguendo,* that this matter involved a civil contract over which State courts could properly exercise jurisdiction, it is our view that defendant's motion to dismiss for failure to state a cause of action

should have been granted. The parties to this action have already been civilly divorced. By commencing this action for specific performance of the Ketubah, plaintiff is asking the State court system to act as the enforcement mechanism whereby defendant will be compelled to appear before the Beth Din. The sole purpose behind compelling this appearance is to enable plaintiff to obtain a religious divorce so that she may at some time in the future marry in accordance with her religious beliefs.

A person seeking to invoke the court's equitable power of compelling specific performance should come before the court with clean hands (*Weiss v Mayflower Doughnut Corp.*, 1 NY2d 310, 316; 20 NY Jur [rev ed], Equity, §§ 102-111). Plaintiff in the instant case has already been judicially found to have breached her marriage vows and had a divorce on fault grounds granted against her. Under these circumstances, plaintiff's complaint fails to state a cause of action for the relief being sought.

Accordingly, Special Term erred in failing to grant defendant's motion to dismiss the complaint.

The order should be modified, on the law, by reversing so much thereof as denied defendant's motion to dismiss the complaint, and the motion granted, and, as so modified, affirmed, with costs.

LEVINE, J. (dissenting). Of course, for purposes of this motion to dismiss the complaint, plaintiff's pleadings and supporting papers must be accepted as true and are entitled to every legitimate inference to be drawn therefrom. We must, therefore, accept as established (1) that there was an actual meeting of the minds between the parties as to the portion of the Ketubah in which they mutually undertook to obtain a Get in the event of a civil divorce, and that their promises were supported by consideration; (2) that defendant's involvement in obtaining the Get could be as minimal as merely appearing before a rabbi to disclose the relevant information and to execute the Get document, and thus, enforcement of this portion of the Ketubah does not entail any religious observance, performance of ritual, or invasion of personal convictions by or on the part of defendant; and (3) that defendant's refusal to

submit to the Get prevents plaintiff from the free exercise of her religion in becoming remarried in a Jewish religious ceremony.

In my view, these facts, if established at a trial, could justify some appropriate exercise of the powers of the New York State Supreme Court, sitting as a court of equity, to enforce plaintiff's contractual rights, albeit with circumspection because of the freedom of religion and separation of church and State overtones to the case.

The majority's reasoning is that because the parties have been divorced civilly and the Ketubah was entered into as part of a religious marriage ceremony, the State has no further interest in the parties' marital status and, therefore, should not "enforce liturgical agreements concerning matters about which the State has no remaining concern".

That the agreement was made as part of a religious ceremony and was executed "in accordance with Jewish law and tradition" does not render it illegal and unenforceable, and indeed to so hold would pose the same First Amendment problems the majority seeks to avoid by its decision. The direct enforcement of provisions of a Ketubah, without reaffirmation in a subsequent or separate nonliturgical agreement, was upheld in *Hurwitz v Hurwitz* (216 App Div 362). *Hurwitz'* rejection of absolute invalidity of the Ketubah as a contract, at least at the pleading stage, is equally applicable here (p 366): "All that we have before us in the present case is a simple agreement, made between a man and a woman in contemplation of marriage, and the sole questions are, what was the agreement and whether the agreement is legal. If it is, then it should be enforced according to the intent of the parties who united in making it. If it is not legal, then the courts should so declare. But I do not see how any court can render intelligent judgment in the premises until there has been a proper judicial investigation by a trial of the issues raised in the pleadings." True, *Hurwitz* involved enforcement of a portion of a Ketubah dealing with property rights during widowhood, but I should think that plaintiff's right to have her marriage finally disposed of through a religious divorce and her right to remarry in a religious ceremony are entitled to no less legal consideration. Similar interests

have been recognized as legally cognizable in other contexts (*Brillis v Brillis,* 4 NY2d 125; *Aufiero v Aufiero,* 222 App Div 479; *Rutstein v Rutstein,* 221 App Div 70).

Likewise, the fact that the parties are already civilly divorced does not preclude enforcement of the promise to submit to a Get under a valid antenuptial agreement, which the Ketubah must be deemed to constitute at this state of the litigation. As to this basis for the majority's holding, the instant case is indistinguishable from *Margulies v Margulies* (42 AD2d 517, app dsmd 33 NY2d 894) and *Waxstein v Waxstein* (90 Misc 2d 784, affd 57 AD2d 863). In both these cases, the absence of any State interest in the marital status of the parties following civil divorce did not prevent judicial enforcement of the promise subsequently to obtain a Jewish divorce. The State's interest in enforcing agreements exists no less in the case of an antenuptial agreement, i.e., the Ketubah, than in the separation agreements involved in these cases.

It is also inappropriate to dispose of plaintiff's action at the pleading stage on the basis of the clean hands doctrine, the majority's alternative ground for dismissing the complaint. We ignore the realities of modern divorce litigation by holding that the granting of an uncontested divorce to defendant, after protracted negotiations, establishes in and of itself such misconduct on plaintiff's part as to result in a total forfeiture of her contractual rights. This, too, is an issue that should only be resolved after full exploration of the relative equities of the parties at a trial.

For all of the foregoing reasons, Special Term's denial of the motion to dismiss should be affirmed.

SWEENEY, KANE and WEISS, JJ., concur with MAHONEY, P. J.; LEVINE, J., dissents and votes to affirm in a separate opinion.

Order modified, on the law, by reversing so much thereof as denied defendant's motion to dismiss the complaint, and motion granted, and, as so modified, affirmed, with costs.