MARGARET CLEARY, as Administratrix of the Estate of MARY A. KENNY, Deceased, Respondent, v KENNY SCOW CORP. et al., Appellants, et al., Defendant.

Second Department, May 23, 1977

*John W. Kenny* for appellants.

*Sidney Zimet (Bernard E. Perelson* on the brief), for respondent.

O'CONNOR, J. We dispose of the appeals before us as follows:

The order dated October 28, 1976 is modified by striking therefrom the first, second, third, sixth and seventh decretal paragraphs thereof, which, in substance, find the defendant John A. Kenny guilty of contempt of court, direct a repayment to the receiver appointed thereunder of the total sum of

$31,716.66 *[sic];* impose a fine upon the said defendant and direct that the said defendant may purge himself of the contempt by payment of the sum of money aforesaid. The order is affirmed in all other respects.

The order dated November 29, 1976 is affirmed in view of the affirmance, as modified, of the order of October 28, 1976, and for the further reason that insofar as appellants, by their motion dated November 8, 1976, sought dismissal of the underlying action, they ignored the fact that a judgment, dated July 29, 1975, had been entered therein and had been affirmed on appeal on January 26, 1976 *(Cleary v Kenny Scow Corp.,* 51 AD2d 567).

The order of October 28, 1976 adjudicates that defendant John A. Kenny (hereafter referred to as defendant) is in contempt of a judgment of the Supreme Court, Kings County, dated July 30, 1975, which contains the following pertinent decretal provisions:

"ORDERED AND ADJUDGED that the defendant, JOHN A. KENNY, shall forthwith cease his appropriation of corporate funds of KENNEY SCOW CORP., from any source in the form of salary payments, and it is further

"ORDERED AND ADJUDGED that any and all moneys received by the defendant, JOHN A. KENNY, since the 1st day of June, 1972, from and out of moneys paid by W.C. CRANE & COMPANY which it owed to KENNY SCOW CORP., were appropriated, and JOHN A. KENNY is hereby directed to forthwith repay all such moneys to KENNY SCOW CORP., and JOHN A. KENNY shall forthwith cease his appropriation of the corporate funds of KENNY SCOW CORP., directly or indirectly, in the form of salary or otherwise, and JOHN A. KENNY shall forthwith repay to KENNY SCOW CORP., all moneys or salaries received by him since the 1st day of June, 1972, from any source.

"ORDERED AND ADJUDGED that the defendant, JOHN A. KENNY, be and he hereby is, enjoined from using, expending and disbursing any of the moneys of KENNY SCOW CORP., until the further order of this Court and upon due notice to the plaintiff."

The judgment is conspicuously ambiguous for its total failure to contain any dollar figures, i.e., the dollar amounts allegedly misappropriated and to be repaid are not specified. In moving to punish defendant for contempt, however, plaintiff's attorney purports to supply these figures, and certain conclusions therefrom. Thus, his affidavit avers:

"That upon the trial of this action, the defendant JOHN A. KENNY, produced as his witness one AUSTIN FLOTTEN. Mr. Flotten testified that he was the bookkeeper of the KENNY SCOW CORP. since the year 1948 and was also the bookkeeper of W. C. CRANE & COMPANY; that under questioning by the Court he testified that JOHN A. KENNY received the following amounts from W. C. CRANE & COMPANY, which was money owed to KENNY SCOW CORP. by CRANE & COMPANY, to wit:—In the year 1972 the sum of $8,725.00; in 1973 the sum of $4,500.00; in 1974 the following amounts: $2,250.00, $500.00 and $400.00; in 1975 the sum of $375.00, making a total of $16,750.00. (Pages A-231, A-258, A-259 of Record on Appeal.) In addition to the above sum of money the defendant received from CRANE & COMPANY, he also received approximately the sum of $14,000.00, the share due KENNY SCOW CORP., from the sale of certain real property in which the KENNY SCOW CORP. had an interest, which property was located in Staten Island, New York.

"That the defendant, JOHN A. KENNY, has wholly failed and neglected to observe, comply with and carry out the provisions and requirements of said judgment by NOT repaying all sums withdrawn after the 1st day of June, 1972, and by continuing thereafter to appropriate corporate funds".

The order of October 28, 1976 provides, in pertinent part:

"ORDERED, ADJUDGED AND DECREED that the said misconduct of the defendant, JOHN A. KENNY was calculated to and actually did defeat, impair, impede, prejudice and delay the rights and remedies of the plaintiff herein to her loss and injury at least in the sum of $16,750.00, which the defendant, JOHN A. KENNY, admits he appropriated since the 1st day of June, 1972, to and for his own use plus the sum of $14,976.66, representing the interest of KENNY SCOW CORP. in the proceeds of the sale of certain real property in which KENNY SCOW CORP. had an interest, making a total of $31,716.66 [sic] due to KENNY SCOW CORP., with interest on said sum from the 30th day of July, 1975".

The order fines defendant and provides that he may purge himself of contempt by repaying, within 30 days, etc., the said sums of $16,750 and $14,976.66, but that if he does not do so plaintiff may apply for a warrant committing him to a county jail until he shall pay the moneys required by the judgment, etc.

It can clearly be seen that because the judgment conspicu-

ously omits mention of any dollar figures with respect to the amounts allegedly misappropriated and to be repaid—and is thus ambiguous—plaintiff's attorney (who patently has no personal knowledge of defendant's "misappropriations") has delved into the trial record to supply that which is missing from the judgment. In so doing, plaintiff's counsel cites certain evidence therefrom and then concludes that the judgment holds that defendant misappropriated "$16,750" in Crane moneys and "approximately the sum of $14,000" in real estate proceeds.

If the record must be dredged, however, to clarify critical ambiguities in the judgment, not perceived until the making of the plaintiff's motion to punish defendant for contempt, then, accompanying plaintiff's evidence, there also rises to the surface of these troubled waters considerable other evidence showing that plaintiff has not met her burden of establishing that defendant is in contempt. The other critical material from the trial record is the following:

In 1906 William Kenny, the father of defendant John A. Kenny, started his marine transportation-by-scow business. When he died his widow inherited the seven scows used in the business and, in 1931, donated them to the newly formed Kenny Scow Corporation, the shareholders of which were the children of the late William Kenny. The only investment in the corporation was the donation of the scows by William Kenny's widow. William Kenny's son, defendant John A. Kenny, who had been working for C. W. Crane & Co. (also in the scow business) continued his employment with C. W. Crane & Co., but was elected president of Kenny Scow Corporation and has continuously remained its president from 1931 to date. In effect, the stockholders of Kenny Scow Corp. left the operation of the business to his skills and judgment and it was John A. Kenny and he alone who kept this floundering business afloat during these troublesome times. Under his aegis as president, the corporation paid the stockholders approximately $15,000 each in dividends. Unfortunately, however, business took a downturn beginning in 1962 and, in 1967, a disastrous reverse was incurred when the loading docks of a customer which provided 85% of the Kenny Scow Corporation's business were destroyed by fire. The corporation's gross earnings declined to zero in 1971 and 1972. During the loss years of 1962 and thereafter, however, defendant continuously drew or accrued the same $3,600 per year

salary he had drawn or accrued since the corporation's board had authorized the $300 per month salary in 1940. After defendant's hopes for a resurgence of business had been virtually crushed by the 1967 fire, he continued to accrue or draw his $300 per month salary because he continued to tend and look after the corporation's three remaining scows. He asserted that this was necessary because if they were to become loose, abandoned or the victim of vandalism, so as to drift, sink, and block navigable channels or waterfront facilities, etc., the scows' owners, under Federal and municipal law, would become subject to criminal and civil penalties. It was uncontroverted that the cost of towing the scows to sea (on a steel barge) to be broken up and burned would be $10,000 each and that the cost of placing them in drydock would be $150 per day, or about $500,000 for three years.

At bar the evidence showed that as of January 1, 1965, C. W. Crane & Co., general agent for Kenny Scow Corp., owed the latter $42,374.42. In the ensuing years Crane gradually reduced the balance so that on January 1, 1972 the balance owed was $25,153.61. By direction of defendant however, and without any objection by plaintiff, a part of the Crane moneys owed to Kenny Scow Corp. was paid by Crane directly to John A. Kenny, the latter claiming (as the trial evidence repeatedly shows) that this was on account of (accrued) unpaid back salary.

Kenny Scow Corp.'s balance sheet shows "Wages Payable: $17,925.00" as of December 31, 1971.

The total Crane moneys paid directly to defendant during the years 1972 to the February, 1975 trial amounted to $16,800. Thus, the subject Crane moneys paid directly to defendant essentially match the accrued back salary owed to him as of December 31, 1971, i.e., prior to (June 1) 1972, the year which the trial court pronounced as the first year in which defendant John A. Kenny could not justifiably earn any more salary. In 1972 the moribund condition of the business had become such that he could not justifiably thereafter earn any salary. The trial court did not state or find that salary claimed for the period prior to 1972 had been illegally accrued or drawn. On the contrary, the court found that he did perform and render required and necessary services.

Thus, the entire thrust of the trial court's decision, and the judgment entered thereon, is that defendant was entitled to

salary for services rendered to June 1, 1972, but that he could not earn and claim salary for the period after June 1, 1972.

The trial record shows that for the year 1972-1974 defendant accrued—i.e., did not draw—his salary; the accrued unpaid salary for this period is shown in plaintiff's Exhibit 6 to total $11,000. It is noted that the corporation's balance sheet shows the salary payable as of December 31, 1974 to be $10,625.

The evidence which I have outlined above clearly demonstrates that the Crane moneys received by defendant in 1972 and thereafter were strictly on account of legitimately accrued back salary; that he did not take salary for services performed after June 1, 1972; and that he did not violate the judgment with respect to the $16,750. As to the $14,976.66 received from the sale of real estate, it is abundantly clear from the record that these entire proceeds went directly into the corporate bank account and that no corporate checks on the proceeds were ever thereafter drawn or paid to the defendant. There was no appropriation of these funds.

In conclusion, the record in no way adequately supports or justifies the October 28, 1976 order with respect to its adjudication that as to the $16,750 (Crane) moneys and the $14,976.66 real estate proceeds, plaintiff is in contempt of a judgment requiring that those sums be paid back. The now over 72-year-old son of the founder of this business should not, and may not, be subjected to contempt machinery and a jail term for failing to repay $31,716.66—an amount not clearly shown in this motion to have been ordered repaid. Plaintiff's hearsay, ambiguous and incorrect interpretations of a vaguely worded prior judgment (containing no dollar amounts) and of the underlying evidence leading to that adjudication may not be made the basis for such drastic relief. There has been a total failure of plaintiff's proof to meet the standard recognized in *Ketchum v Edwards* (153 NY 534, 539): "But as punishment for contempt involves, or may involve, not only loss of property but liberty, it is a reasonable requirement that the mandate alleged to be violated should be clearly expressed, and when applied to the act complained of it should appear, with reasonable certainty, that it had been violated."

Neither standard has here been met and the determination of contempt has therefore been reversed.

MARGETT, J. P., SHAPIRO and TITONE, JJ., concur.

320

Order of the Supreme Court, Kings County, dated October 28, 1976, modified, on the law and the facts, by deleting the first, second, third, sixth and seventh decretal paragraphs thereof. As so modified, order affirmed, without costs or disbursements.

Order of the Supreme Court, Kings County, dated November 29, 1976, affirmed, without costs or disbursements.