OPINION OF THE COURT
Jeffrey G. Stark, J.
A husband charged with breaking into his wife’s apartment in violation of a judgment awarding her exclusive possession may not avoid a contempt citation by a collateral attack upon the judgment itself. For such a judgment carries with it justified expectations of privacy and personal security, the preservation of which are perhaps the most important objectives of our governmental system. To countenance a breach of these expectations is to invite not only disrespect for the court, but a loss of faith in govern *82 ment itself. “If one man can be allowed to determine for himself what is law, every man can. That means first chaos, then tyranny.” (United States v Mine Workers, 330 US 258, 312 [Frankfurter, J., concurring].) No judicial act could have more far-reaching consequences than repudiation of the power of its own decree.[1]
For the reasons which follow, then, plaintiff is found to be in civil contempt, is ordered to pay $1,000 to defendant, and is ordered to return identified property or face further sanctions.
FACTS
In this matrimonial action, a judgment was entered on March 18, 1983 dismissing plaintiff husband’s complaint for divorce after trial, and granting defendant’s counterclaim for support and other relief based upon an oral agreement of the parties dictated into the trial record.
The judgment specifically provided, pursuant to the parties’ agreement, that “the defendant and children of the marriage shall have exclusive occupancy” of a condominium apartment in Westhampton jointly owned by the parties.[2] The judgment also provided that “plaintiff releases to the defendant any claim that he may have” to “the contents of* * * the [Westhampton] condominium apartment”.
Defendant now moves by order to show cause to hold plaintiff in contempt for willfully violating the above-quoted provisions of the judgment. She asserts that “sometime between March 25, 1983 and March 31, 1983, the latter date being the time when I arrived at the aforesaid condominium apartment with my children, I ascertained that the door locks to said apartment were changed, and upon entering thereto I ascertained that the following personal property had been removed therefrom: (a) one *83 color television from children’s room; (b) one Hoover vacuum; (c) one enamel etching on an easel (beach scene); (d) one boat model kit; (e) one oil lamp; (f) one ocean surf fishing rod and reel; (g) one Royal Copenhagen ash tray; and (h) miscellaneous items, including lobster buoys.” Defendant states further that “on a tape recorder at the condominium apartment, the plaintiff brazenly left a message for the defendant acknowledging that he had entered the apartment and changed the locks.” As relief, defendant seeks an order punishing plaintiff for contempt, directing him to return the personal property taken, and awarding reasonable counsel fees.
In response to the motion, plaintiff’s attorney submits an affirmation admitting that plaintiff entered the apartment and left a taped message for defendant. Nevertheless, the attorney asserts, first, that a motion for contempt “cannot be granted on motion papers.” Second, he argues that plaintiff should not be held in contempt since the stipulation underlying the judgment awarding defendant exclusive occupancy of the apartment “is void and unenforceable.” Although the attorney admits that, after the date plaintiff entered the apartment, a motion to vacate the judgment based upon the claim that the stipulation was improperly executed was rejected by Mr. Justice Pantano, he asserts that “the Court did not have the power to sign the Judgment” and urges that it should be vacated.
With regard to the personal property defendant claims was taken from the apartment, the attorney states, without an affidavit from his client denying that he has taken the property, that defendant’s affidavit “is much too cryptic and leaves open a question as to whether or not the plaintiff removed the marital property or whether the premises were burglarized prior to the plaintiff entering the marital premises.”
DISCUSSION
Under the Judiciary Law, this court has the power to punish both criminal and civil contempts. (Judiciary Law, §§ 750, 753.) “[T]he main line of distinction between criminal and civil contempts is that the one is an offense against public justice, the penalty for which is essentially punitive, while the other is an invasion of private right, the penalty *84 for which is redress or compensation to the suitor.” (King v Barnes, 113 NY 476, 480.)
Criminal contempt requires proof beyond a reasonable doubt that a party willfully violated a court order. (See Powell v Clauss, 93 AD2d 883; Yorktown Cent. School Dist. v Yorktown Congress of Teachers, 42 AD2d 422, 426.) In contrast, “ ‘[w]ilful disobedience of the court’s mandate is not a requisite for civil contempt’ ”. {Matter of Benson Realty Corp. v Walsh, 73 Misc 2d 889, 894; accord McComb v Jacksonville Paper Co., 336 US 187, 191; Great Neck Pennysaver v Central Nassau Pub., 65 AD2d 616, 617; see, also, 21 NY Jur 2d, Contempt, § 9.)
In the instant case, the motion papers do not specify whether defendant is seeking civil contempt, criminal contempt, or both. The court must therefore determine the appropriate nature of the proceeding by examining the reason for which resort to the court’s contempt power is undertaken. (See Matter of Anthony N., 106 Misc 2d 213, 219.)
It is clear that the thrust of defendant’s motion is for civil contempt. The order to show cause appears to have been drafted to conform to the procedural requirements for a motion for civil contempt (see Judiciary Law, § 756), and the relief sought — namely, return of the property taken and an order awarding counsel fees — is remedial and compensatory in nature, rather than punitive.
In addition, nowhere in the order to show cause does defendant suggest that she is seeking criminal contempt. Both under the Judiciary Law (§ 751, subd 1), and as a matter of fundamental due process, an alleged contemnor is entitled to know that criminal contempt is being sought before the imposition of criminal sanctions may be considered. (See Bloom v Illinois, 391 US 194, 198, 208 [party-charged with criminal contempt is entitled, like any criminal defendant, to “all of the procedural protections * * * deemed fundamental to our system of justice”]; Gompers v Buck Stove & Range Co., 221 US 418, 446 [person served with contempt motion “ought to be able to see (by a mere inspection of the papers) whether it was instituted for private litigation (civil contempt) or for public prosecution (criminal contempt)”]; see, also, Matter of Spector v Allen, *85 281 NY 251, 256.) Accordingly, the court declines to construe the motion as raising a claim for criminal contempt, and turns to consider whether civil contempt has been established.
For a party to be held in civil contempt, the mandate alleged to have been violated must be clear and explicit, and the violation must be established with reasonable certainty. (Coan v Coan, 86 AD2d 640, 641, app dsmd 56 NY2d 804; Cleary v Kenny Scow Corp., 57 AD2d 313, 319.) The court must also find that the contemnor’s actions “were calculated to or actually did defeat, impair or prejudice the rights or remedies of the [complainant].” (Powell v Clauss, 93 AD2d 883, supra; Matter of Planning Bd. v Zoning Bd. of Appeals, 75 AD2d 686, 687; Great Neck Pennysaver v Central Nassau Pub., 65 AD2d 616, 617, supra; see, also, Judiciary Law, § 753, subd A; §§ 754, 770.)
Judged by these standards, defendant has made out a proper claim for civil contempt. The judgment upon which defendant relies explicitly provides that she is to have “exclusive occupancy” of the condominium apartment and provides further that plaintiff has no right to the contents of the apartment. Plaintiff’s actions in entering the apartment, changing the locks, and removing certain property, are clearly prohibited by the terms of the judgment and equally clearly have the immediate effect of defeating defendant’s rights as established by the judgment.
Contrary to plaintiff’s contention that he cannot be held in contempt without a hearing, a hearing is unnecessary where the facts are not in dispute. (See State of New York v Unique Ideas, 56 AD2d 295, 297, mod on other grounds 44 NY2d 345; Friendly Ice Cream Corp. v Great Eastern Mall, 51 AD2d 883, app dsmd 39 NY2d 1032; cf. Matter of McDonnell v Frawley, 23 AD2d 729, 730.) While it would be improper for the court to decline to order a hearing if any genuine factual disputes existed (see Powell v Clauss, 93 AD2d 883, supra) in this case plaintiff was ordered to show cause why he should not be held in contempt, and he has failed to do so.
By admitting the claim that plaintiff entered the apartment and by not denying that he changed the locks to the apartment, plaintiff’s attorney has conceded the valid *86 ity of these charges. Moreover, the attorney’s speculation that plaintiff may not have removed property from the apartment does not suffice to raise an issue of fact. Absent an affidavit from plaintiff, who certainly knows whether or not he removed the property, the court deems plaintiff’s failure to deny the allegation as an admission. (See CPLR 3018, subd [a]; 17 CJS, Contempt, § 83; Judiciary Law, §§756, 772 [civil contempt motion shall be heard and determined according to procedures applicable to civil motions].) Since the acts alleged by defendant are in effect admitted by plaintiff,[3] the court finds, as a matter of law and to a reasonable certainty, that plaintiff is guilty of civil contempt, having engaged in actions that were calculated to or actually did defeat, impair and prejudice defendant’s rights.
Plaintiff contends, however, that since the stipulation underlying the judgment was not properly executed, he cannot be held in contempt for violating the terms of the judgment. In the context of the case, plaintiff’s contention lacks merit.
When a party is charged with contempt, as a general rule he may not collaterally attack the judgment he has violated. So long as the court issuing the judgment had jurisdiction over the parties and the subject matter,[4] even if the judgment was erroneous the parties are obligated, in the absence of a stay, to obey the court’s mandate until vacated or reversed. (See Ketchum v Edwards, 153 NY 534, 538-539; County of Orange v Civil Serv. Employees Assn., 51 AD2d 1031,1032; Margulies v Margulies, 42 AD2d 517, app dsmd 33 NY2d 894; Burchell v Cimenti, 38 AD2d 897; Lefkowitz v Grosswald, 33 Misc 2d 905, 907, affd 16 AD2d 889; Matter of Boland v Parisi, 259 App Div 847; see, also, Maness v Meyers, 419 US 449, 458; Maggio v Zeitz, 333 US *87 56, 68-69; Oriel v Russell, 278 US 358; Halderman v Pennhurst State School & Hosp., 673 F2d 628, 637; Florida Steel Corp. v National Labor Relations Bd., 648 F2d 233, 238, n 10; Merriam Co. v Webster Dictionary Co., 639 F2d 29, 34; AMF Inc. v International Fiberglass Co., 469 F2d 1063, 1065; Bacho v Local 281, 308 F Supp 172, 176-177, affd 438 F2d 176, cert den 404 US 858; Gallela v Onassis, 533 F Supp 1076, 1105; Ann., 12 ALR2d 1059, 1107-1116 [§§ 41, 43]; 17 CJS, Contempt, § 14; 5 Weinstein-KornMiller, NY Civ Prac, par 5104.17.)
The reason for this is obvious: the orderly administration of justice requires that parties not be permitted to make private, unreviewable decisions as to whether a judgment should be obeyed. (See Ketchum v Edwards, supra, p 539.)
Admittedly, there is authority to the contrary, suggesting that a party charged with civil contempt, but not criminal contempt, may collaterally attack the order or judgment violated. (See United States v Mine Workers, 330 US 258, 294-295, supra [dicta]; Mount Sinai Hosp. v Davis, 8 AD2d 361, 363-364, mot for lv to app den 9 AD2d 641 [dicta]; 21 NY Jur 2d, Contempt, § 28; 5 Weinstein-KornMiller, NY Civ Prac, par 5104.17.) But, as the latter treatise points out, collateral attack, where permitted, has been often justified “when some overriding policy would be impaired by a failure to permit such a challenge”, e.g., “when the judgment or order being challenged attempts to restrain or inhibit constitutionally protected conduct.” (5 Weinstein-Korn-Miller, par 5104.17.) Also, there has been some expression of judicial concern that a party who obtained an erroneous judgment should not be permitted to receive a windfall in fines imposed for the contempt. (See United States v Mine Workers, supra; 5 Weinstein-KornMiller, par 5104.17.) However valid these concerns are in other contexts, they are not applicable to this case.
Where, as here, the judgment was entered on consent of the parties based upon their own voluntary agreement, with no indication of overreaching, unfairness or unconscionability (cf. Christian v Christian, 42 NY2d 63, 71-72), and the remedy sought for its violation would not produce a windfall but rather would put the parties roughly in the same position they would be in had the judgment been *88 obeyed, it should be immune from collateral attack on a motion for civil contempt.
The need to apply a rule forbidding collateral attack is particularly critical in this case, since obedience to the court’s mandate is essential to preserve the physical and emotional integrity of the spouse benefiting from the judgment. Where the judgment awards one spouse exclusive possession of a home or apartment, that judgment creates justified expectations of privacy and protection against unwarranted intrusions by the other spouse the breach of which can be tolerated only upon a showing of the gravest necessity.
Here, the plaintiff has shown no necessity for his unilateral and aggressive violations of defendant’s established rights. In the court’s view, permitting such a contemnor to avoid civil contempt remedies by allowing technical attacks upon the judgment can only encourage self-help, promote disrespect for the law, and violate basic privacy expectations which go to the very heart of the judgment. To quote the Supreme Court’s opinion in Maggio v Zeitz (333 US 56, 69, supra), “[i]t would be a disservice to the law if we were to depart from the long-standing rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed * * * The procedure to enforce a court’s order * * * should not be so inconclusive as to foster experimentation with disobedience”.
In any event, the precise parameters of the rule against permitting collateral attack, and its exceptions, need not be delineated here. Even if collateral attack upon a judgment is permissible under certain circumstances, it is not available to plaintiff in this case since the issues he raises have been previously considered and rejected by Mr. Justice Pantano. As previously noted, in an order entered April 26, 1983, Justice Pantano ruled that the judgment would not be set aside based upon the claim that the stipulation was not properly executed.[5] His decision is *89 binding upon this court as the law of the case, and may not be relitigated by plaintiff. (See Martin v City of Cohoes, 37 NY2d 162, 165; Wagenmann v Wagenmann, 96 AD2d 534, 536; cf. Solomon v Reich, 84 AD2d 812 [defendant should have been held in contempt rather than been permitted to relitigate validity of interlocutory judgment issued by court of co-ordinate jurisdiction].)
For the foregoing reasons, the court holds plaintiff to be in civil contempt. Since defendant has not submitted proof of actual loss or injury, plaintiff is ordered to pay to defendant the sum of $1,000, representing the statutory fine of $250 plus reasonable attorney’s fees.of $750 (based upon an affidavit of defendant’s attorney). (Judiciary Law, § 773; see Matter of Planning Bd. v Zoning Bd. of Appeals, 75 AD2d 686, supra; Bennett Bros. v Bennett Farmers Market Corp., 16 AD2d 897.)
Within 20 days of personal service of a certified copy of this order upon plaintiff, he may purge himself of contempt with regard to the property taken[6] by turning over to defendant the property specified in the accompanying order. In the event plaintiff does not timely purge himself of this contempt defendant may move, on notice, for an order determining the amount of her loss (Judiciary Law, § 773), and for further sanctions.

. See Locke, Second Treatise of Government, par 87 (“Those who are united into one body and have a common established law and judicature to appeal to, with authority to decide controversies between them and punish offenders, are in civil society one with another; but those who have no such common appeal * * * are still in the state of nature, each being * * * judge for himself and executioner”); par 219 (“Where there is no longer the administration of justice for the securing of men’s rights * * * there certainly is no government left. Where the laws cannot be executed it is all one as if there were no laws; and a government without laws is, I suppose, a mystery in politics inconceivable to human capacity, and inconsistent with human society.”).

. The agreement contemplates the eventual sale of the apartment, but that provision is not in issue here.

. The only allegation which plaintiff appears to seriously dispute is that he willfully violated the judgment. As noted above, however, willfulness need not be proven to establish civil contempt. Nor is it a defense to civil contempt that a party acted in violation of a judgment based upon the erroneous advice of counsel. (See 21 NY Jur 2d, Contempt, § 80 [citing cases].)

. It is not disputed that the court had jurisdiction over the parties and the subject matter. Although plaintiff claims that the court lacked the power to sign the judgment, statutory authority for the court’s judgment is expressly conferred by section 234 of the Domestic Relations Law. (See Scheinkman, 1982 Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law, 1982-1983 Pocket Part, C234:3, C234:4.)

. Justice Pantano ruled that plaintiff failed to make a showing of “collusion, mistake, accident or similar grounds” required to warrant vacating the judgment. Since the judgment was entered upon a settlement of a counterclaim for necessaries in a case where no divorce or separation was granted, he determined that the statutory standards governing property settlements in actions where the marital relationship has been judicially altered were inapplicable.

. Whether or not plaintiff purges himself of this contempt, the $1,000 fine imposed will not be altered, since his actions in entering the apartment and changing its locks constitute a separate act of contempt that can only be remedied through the imposition of an unconditional fine.