In the Matter of CHERISE MURRAY and Another. COMMIS-
SIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK,
Appellant.

First Department, December 22, 1983

APPEARANCES OF COUNSEL

*Aaron I. Blinder* of counsel (*Stephen J. McGrath* with him on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for City of New York.

*Doris May Pope* and *Alan G. Krams* of counsel (*Joseph M. Armstrong, Special Assistant Corporate Counsel,* attorney), for appellant.

OPINION OF THE COURT

SULLIVAN, J. P.

This appeal has its genesis in two Family Court foster care review proceedings conducted pursuant to section 392 of the Social Services Law. In one, an order (M. HOLT MEYER, J.), was issued on June 19, 1980, directing that foster care of the child, Tjuana Murray, be continued with the Commissioner of Social Services of the City of New York. The order further directed the Office of Special Services for Children, a division of the New York City Department of Social Services, to initiate proceedings to free the child legally for adoption. The order contained the following paragraph: "Upon failure by said agency to institute such a proceeding within ninety (90) days after entry of the Order, the foster parent or parents in whose home the child resides in are authorized to institute such proceeding." An almost identical order (DANIEL D. LEDDY, JR., J.), was issued on September 4, 1980, with respect to Cherise Murray.

Termination proceedings to free both children for adoption were initiated by the commissioner in Family Court on or about February 22, 1982, 20 months after the first order directing the commencement of termination proceedings had been entered. Six months later, on August 23, 1982, in a subsequent foster care review proceeding involving both children, the court (MEYER, J.), although aware that termination proceedings were scheduled to be heard on September 2, 1982,* *sua sponte,* issued two orders directing the commissioner to show cause why he should not be held in contempt of court for failure to obey the prior orders to commence termination proceedings.

---

* On September 29, 1982, orders freeing both children for adoption were entered (JACK TURRET, J.). The children are to be adopted by the same foster parents with whom they have lived since 1974.

■ Arguing that the Family Court is without power to impose the sanction of contempt, the commissioner moved to vacate the August 23, 1982 orders and to stay all proceedings pending the determination of the motion. The court rejected this argument, holding that the Family Court is vested with broad contempt powers, except where a specific punishment is provided which would supersede the sanction of contempt. Accordingly, it denied the commissioner's motion and scheduled the contempt proceedings for a day certain. This court granted leave to appeal, and all proceedings were stayed pending determination of the appeal. We now reverse and vacate the orders to show cause.

The Family Court enjoys the civil and criminal contempt powers accorded to courts of record by sections 750 and 753 of the Judiciary Law. Its power to treat as a contempt the violation of an order which directs a party, agency or other entity to do or refrain from doing an act is governed by section 156 of the Family Court Act. The present statute, (L 1975, ch 496), provides that a violation of a Family Court order is punishable as a contempt "unless a specific punishment or other remedy for such violation is provided in this act or any other law."

In its original form section 156 did not treat the violation of an order of disposition as a contempt (see L 1962, ch 686). This was due to the special nature of many of the court's dispositional powers and the specific provision found in other sections of the Family Court Act for the violation of dispositional orders (see Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Part 1, Family Ct Act, § 156, p 97). In fact, cases interpreting the original section 156 held that even a violation of a directive which was incidental to an order of disposition was not punishable as a contempt. (See, e.g., *Matter of "Anonymous" v People,* 20 AD2d 395, affd *sub nom. Matter of Fish v Horn,* 14 NY2d 905; *Matter of Horn v Fisher,* 54 Misc 2d 671.) In 1966 the section was amended to provide that "the family court may not treat a violation of any order of disposition by a party to a proceeding in the family court, as a civil or criminal contempt, unless specifically empowered to do so under this act." (See L 1966, ch 366.)

Thus, the proscription against the utilization of contempt for violation of a dispositional order was removed except for violations "by a party" and for which specific authorization was provided.

A question remained, however, as to the extent of the court's contempt power, especially over those persons, such as a parent, or agency officials who are formally before the court, whether or not designated a party, and fail to comply with a directive. If the person or agency official was a party to the proceeding the court's directive might be considered an order of disposition, for the violation of which the sanction of contempt was unavailable absent a specific authorization in the Family Court Act. On the other hand, if the person or agency official was not a party, the court's power to direct a nonparty to perform or refrain from doing an act was in question. (See Besharov, Practice Commentary, *op. cit.*, at pp 98-99.) The 1975 amendment of section 156 was intended to dispel any lingering doubt about the court's contempt powers. As the memorandum of the Office of Court Administration noted: "It authorizes the use of the contempt power in situations where courts traditionally have invoked that power; specifically, when a court has ordered someone over whom it has jurisdiction to do something or to refrain from doing something, even though the direction is incidental to an order of disposition * * * It also makes explicit that the court's power extends to any person properly before the court, rather than merely a formal party to the proceeding; and limits the contempt power to those situations where no other statutory remedies are authorized." (NY Legis Ann, 1975, p 18.)

As already noted, the Family Court's 1980 orders, upon which the contempt proceedings are based, directed that the children's foster care be continued and that the Office of Special Services for Children institute termination proceedings. In this regard the orders tracked the language of subdivision 7 of section 392 of the Social Services Law:

"At the conclusion of such [foster care review] hearing, the court shall, upon the proof adduced, in accordance with the best interest of the child, enter an order of disposition:

"(a) directing that foster care of the child be continued; or
* * *

"(c) in the case of a child whose care and custody have been transferred temporarily to an authorized agency directing any agency specified in subdivision four of this section to institute a proceeding * * * to legally free such child for adoption * * * Upon a failure by such agency to institute such a proceeding within ninety days after entry of such order, the court shall permit the foster parent or parents in whose home the child resides to institute such a proceeding."

The orders also contained the authorization expressly provided by section 392 (subd 7, par [c]) of the Social Services Law for the foster parents to initiate termination proceedings if the agency fails to do so within 90 days. In enacting section 392 (subd 7, par [c]) the Legislature undoubtedly recognized the strong interest of the foster parents in the welfare of the child, and afforded them a statutory remedy in case the authorized agency failed to act. Thus, since, in each instance, an express statutory remedy exists enabling the foster parents to proceed directly to free the child for adoption in case the agency charged with the child's custody cannot or will not institute such a proceeding, a violation of the underlying order is not punishable by contempt under section 156 of the Family Court Act.

In finding that a violation of these orders is not subject to the sanction of contempt because of the availability of another remedy, we are not unmindful of the, at times, inadequacy of the statutory remedy in situations such as this, where the failure to commence termination proceedings delayed the adoption process by at least 17 months. These shortcomings are, however, a matter for legislative amelioration. As a practical matter, the Family Court could tailor its order to take into account the possibility that the foster parents might not avail themselves of the opportunity to institute a termination proceeding on their own. For instance, the order could provide for the giving of notice to the foster parents in the event the agency fails to institute such a proceeding, and upon the foster parents' refusal to act within a time certain, further direct that the agency, upon notice to it of the foster parents' refusal, do so. The failure to act in response to the further directive would give rise to a violation not otherwise statutorily

remediable. In any event, the availability of a remedy, whether or not the foster parents took advantage of it, precludes the Family Court from holding the commissioner in contempt for failing expeditiously to commence termination proceedings. Of course, if the child is not residing in a foster home setting then an alternative statutory remedy would not exist and an agency's violation of a directive to commence termination proceedings would be punishable as a contempt. That is not the case here, however.

■ Quite apart from the inapplicability of the contempt sanction to the cited violation, the orders to show cause suffer from other fatal deficiencies. As the court conceded, the contempt sought is criminal, not civil, since the court was attempting to compel respect for its mandates, rather than to vindicate the rights of a party to the proceeding. (See *Matter of McCormick v Axelrod,* 59 NY2d 574, 582-583; *State of New York v Unique Ideas,* 44 NY2d 345; *King v Barnes,* 113 NY 476.) A proceeding to punish for a criminal contempt of court which arises out of a civil action is a special proceeding separate and distinct from the original underlying action. (*Matter of Douglas v Adel,* 269 NY 144; *Board of Educ. v Pisa,* 54 AD2d 821.) Personal service is required. (See *Pitt v Davison,* 37 NY 235, 238-239; *People v Balt,* 34 AD2d 932, 933; *Billingsley v Better Business Bur.,* 232 App Div 227, 228.) The commissioner was never personally served; instead, the orders to show cause were left at the Family Court clerk's office and picked up at a later time by a member of his staff. The failure to effect personal service is a jurisdictional defect never waived by the commissioner, who promptly moved to vacate the orders to show cause on the ground, *inter alia,* of lack of personal jurisdiction.

Furthermore, in order to be found guilty of criminal contempt, it must be shown that the accused violated the underlying order with a higher degree of willfulness and contumaciousness than is required in a civil contempt proceeding. (See *Matter of McCormick v Axelrod,* 59 NY2d, at p 583; Judiciary Law, § 750, subd A, par 3.) Here, the orders to show cause allege merely that the commissioner "fail[ed] to obey [the underlying] order".

While the inaction of the Office of Special Services for Children substantially delayed the commencement of the termination proceedings and should not be condoned, the mere allegation that the commissioner "fail[ed] to obey" orders in two of the countless number of cases for which he is responsible is insufficient to support a criminal contempt proceeding. Moreover, while a public official may be held in civil contempt in his official capacity for the acts of his delegate, we do not believe he should be held vicariously responsible for such acts in a criminal contempt proceeding with its requirement of a higher degree of willfulness. (See *Matter of McCormick v Axelrod,* 59 NY2d, at pp 586-587.)

Accordingly, the order of the Family Court, New York City Foster Care Review Term (M. HOLT MEYER, J.), entered October 12, 1982, which, *inter alia,* denied the motion of the Commissioner of Social Services of the City of New York, to vacate two orders issued on August 23, 1982, should be reversed, on the law, without costs or disbursements, and the motion granted.

ROSS, CARRO, ASCH and BLOOM, JJ., concur.

Order, Family Court, New York Foster Care Review Term, entered on October 12, 1982, unanimously reversed, on the law, without costs and without disbursements, and the motion to vacate two prior orders of the Family Court granted.