OPINION OF THE COURT
M. Holt Meyer, J.
This is a child protective proceeding brought under Family Court Act article 10 by the Commissioner of Social Services (CSS) on October 12, 1983, against the respondent mother of the above-named infant, born on October 1, 1983. The respondent, represented by counsel, admitted to neglect on April 4, 1984, The child was remanded to the Commissioner for temporary care from the date of the petition, under successive court orders, until June 19, 1984, when the court placed the child with the Commissioner for 18 months.
The Commissioner filed a petition for extension of placement on October 7, 1985. On December 10, 1985, with the Commissioner’s attorney present, the court granted the petition extending placement for 12 months as of December 19, 1985, and at the same time, directed the agency to file a petition to terminate the respondent’s parental rights on or before March 10, 1986. (Family Ct Act § 1055 [d].) The case was adjourned until March 10 for a report on the status of the child and the termination petition.
On March 10, 1986, the court was advised by the agency that a termination petition had not been filed as directed. The case was adjourned until March 17, 1986, for further report from the Commissioner. On that date the CSS attorney appeared, and the court issued an order to show cause (OSC) why Martin Baron, the Commissioner’s Assistant General Counsel, should not be held in contempt of court for failure to obey the court’s order of December 10, 1985. The clerk’s indorsement in the court file reveals that two copies of both orders, the OSC and the underlying order, were given to the Commissioner’s attorney. The transcript reveals that the court asked the Commissioner’s attorney, Mr. Edward Parker, if he had any problem accepting service of the OSC on behalf of Mr. Baron, to which Mr. Parker replied in the negative. The court set the return date of the OSC for the afternoon of March 24, 1986, at the request of Mr. Parker. Associate General Counsel Robert Wayburn appeared on March 24, 1986, representing the Commissioner and Mr. Baron, and opposed the OSC on jurisdictional and procedural grounds. The Legal Aid Society, by Stuart Weinstein, appeared on *1055 behalf of the child. After hearing argument, the court reserved decision.
The Family Court possesses both civil and criminal contempt powers pursuant to the Judiciary Law. (Family Ct Act § 156.) However, the Family Court is precluded from exercising its contempt powers where there is extant another remedy or specific punishment provided elsewhere in the law. (Family Ct Act § 156; Matter of Murray, 98 AD2d 93.)
The Commissioner contends that Matter of Murray (supra) and the companion case of Matter of Wilson (98 AD2d 666) are apposite. In Matter of Murray (supra) the Appellate Division found that the section of the Social Services Law, which allows foster parents to file a petition to terminate parental rights, if the agency fails to do so within 90 days, constitutes an alternate remedy precluding Family Court from exercising its contempt powers under Family Court Act § 156. The court so found despite the specious nature of this alternate remedy in cases where the foster parents do not desire to adopt the child. Indeed, the court noted the "inadequacy of the statutory remedy” but deemed it a "matter for legislative amelioration.” (Matter of Murray, supra, at p 97.)
By way of dicta, the court implied that the Family Court could redress this inadequacy by resorting to the contempt power after violation of a second directive to the agency. The decision in Murray (supra) seems to require the following procedure after the agency has failed to obey an order by the court to file a termination petition: the court is to give notice to the foster parents (assuming the child is actually with foster parents) that pursuant to statute they may now file for termination of parental rights; then, on their failure to do so, the court must again direct the agency to file for termination, at which time "[t]he failure to act in response to the further directive would give rise to a violation not otherwise statutorily remediable”. Meanwhile the child continues to linger in limbo, lacking permanence, with possible adoption delayed and, possibly, foreclosed. For many children in foster care, months of delay turn into years, and childhood is lost forever leaving emotional handicaps.
The Murray and Wilson cases (supra), and the case at bar, have primarily involved the sanction of criminal contempt, a tool to vindicate the court’s authority and compel compliance with its orders. It is posited that the civil contempt sanction, the purpose of which is to vindicate a party’s rights, as *1056 established by the court, may be applicable in these cases. It is the subject child who suffers by the agency’s delay in complying with the court’s order to file a termination petition. These orders are not issued without basis. The statutes require the court to make a finding that there is reasonable cause to believe that there are grounds for termination of parental rights. (Family Ct Act § 1055 [d]; Social Services Law § 392 [7] [c].)
The amount of a civil contempt fine is determined by the amount of injury to the victim of the contempt rather than the nature of the contempt. (State of New York v Unique Ideas, 44 NY2d 345.) The purpose of the fine is to compensate the injured party. (Matter of McCormick v Axelrod, 59 NY2d 574, 583.) In the case at bar, how would we measure the injury to the child caused by delaying her right to permanency; how much money could compensate a child for such emotional damage? Where actual damage has resulted, a remedial award is to be made. (Judiciary Law § 773.) This statute limits the fine to $250 where the damages are not ascertainable which, as this case demonstrates, is often a wholly inadequate amount. (See, N. A. Dev. Co. v Jones, 99 AD2d 238.)
The incarceration sanction for civil contempt is limited to that time period during which the contemnor has yet to comply with an order even though he is still capable of complying. If the incarceration is for nonpayment of a civil contempt fine, the statute sets other time limitations. When the contemnor no longer has the power to perform the act ordered, incarceration is limited to six months. (Judiciary Law § 774.) In the case at bar, incarceration would not be permissible for civil contempt because the Commissioner has now filed a termination petition though not within the 90-day time period as ordered by the court. Because the petition has now been filed, the damage would be measured by the injury to the child caused by the delay in filing the petition.
Civil contempt, in a case like this, differs in several ways from criminal contempt. In Matter of Murray (supra, at p 99) the court said, "a public official may be held in civil contempt in his official capacity for the acts of his delegate”. The Court of Appeals has stated, "[t]he [Commissioner [of Health] having chosen to act through his subordinates may not escape the consequences of their contumacious conduct”. (Matter of McCormick v Axelrod, supra, at p 587.)
*1057 Also, civil contempt service upon the alleged contemnor’s attorney is sufficient, if ordered by the court, to obtain personal jurisdiction over the accused. (Judiciary Law § 761.)
Criminal and civil contempt further differ with respect to the requisite burden of proof. The former requires proof beyond a reasonable doubt; the latter only requires proof to a reasonable certainty. (N. A. Dev. Co. v Jones, supra, at p 242.) Of course, it should also be noted that an act may constitute both civil and criminal contempt. (Matter of Larisa F. v Michael S., 122 Misc 2d 520.)
In addition to child protective proceedings (Family Ct Act § 1055 [d]) and foster care review proceedings (Social Services Law § 392 [7] [c]), the problem of children lingering in foster care also arises where a parent has voluntarily placed a child into foster care. (Social Services Law § 358-a [3] [b].) This section was recently amended (L 1985, ch 808) to expressly provide Family Court with civil contempt power for violation of an order involving a voluntary placement instrument and "requiring the implementation of a specific plan of action by the social services official to exercise diligent efforts toward the discharge of the child from care, either to his own family or to an adoptive home”. It is clear that the Legislature intended to strengthen the court’s power to ensure that the Social Services agency does not let children linger in foster care unnecessarily. The legislative intent in amending this Social Services Law section was "to better provide for the permanency planning of the child”. (L 1985, ch 808, § 1.) To discourage nonfeasance by the agency which would obviously injure the child, the court was given the civil contempt power in this section, thereby avoiding any need to resort to Family Court Act § 156 which requires that no alternate remedy be available before the contempt power may be utilized. The Legislature is urged to amend Family Court Act § 1055 and Social Services Law § 392 similarly, so that the court can, by its contempt power, enforce its orders directing agencies to file termination petitions, without first considering whether there is an alternate remedy, thereby effectively expediting the child’s permanency planning.
The case at bar vividly demonstrates the need to abolish the requirement that the court direct alternate remedies before using its contempt power. While his counsel, Mr. Wayburn, argued against a contempt finding on procedural and jurisdictional grounds, Mr. Baron in fact admitted the acts constitut *1058 ing disobedience of the court’s order. On March 24, 1986, after the court reserved decision on Mr. Wayburn’s arguments, Mr. Baron made an offer of proof on the merits: he admitted receiving the underlying order directing the filing of a termination petition after it was issued on December 10, 1985, though he could not remember the exact date. He said the case was referred to one of his attorneys, Dorothy Elfenbein, Esq., "for a review of the appropriate action”. She received the case record during the week of February 18 and called the caseworker, Ms. Nievez. The caseworker then told the attorney that "the SSC [Special Services for Children] plan for the child had changed.” Discharge of the child to the mother was planned for March 10. Apparently, according to Mr. Baron, the attorney planned to make an oral motion on March 10, 1986, to vacate the court’s order of December 10, 1985, directing the filing of a termination petition. The week prior to March 10, SSC changed its opinion, deciding that the child could not be discharged to the mother; however, the CSS attorneys were not apprised of this position until after March 10. The attorney, Ms. Elfenbein, reviewed the case record on March 11 and 12 and found it "questionable whether there was a basis for a proceeding to terminate parental rights.” Mr. Baron told the court he agreed with her, and an adjournment until March 17 was requested so that CSS could "have a case conference on this case and ascertain whether we should move to modify the court’s order or to proceed in the termination.” On March 17, Ms. Elfenbein was ill, and subsequently the case was assigned to a different SSC attorney. According to Mr. Baron, the petition to terminate parental rights as ordered by the court on December 10, 1985, was filed by SSC on March 21, 1986.
Mr. Baron’s testimony reveals a blatant disregard of the court’s order by CSS. Rather than comply with the court’s order, CSS by its caseworkers and attorney chose to second-guess and ignore the court’s judgment that there was reasonable cause to believe that grounds for termination exist in this case. Ultimately, CSS seems to have reached the same determination on its own after wrongfully delaying the termination proceeding.
By enacting Family Court Act § 1055 (d) the Legislature certainly could not have intended that CSS possess discretion to flagrantly disregard a court order which was necessarily based on a finding of reasonable cause to believe grounds for *1059 termination exist. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 143.) CSS sought in effect to act as an appellate court reviewing the Family Court’s determination of whether a termination petition should be filed.
Courts cannot countenance disrespect for their orders. "No judicial act could have more far-reaching consequences than repudiation of the power of its own decree”. (Garry v Garry, 121 Misc 2d 81, 82.)
When an alleged contemnor admits the acts in question or fails to deny them in the face of an OSC, the court need not hold a hearing on contempt. (Garry v Garry, supra, at p 85.) In the case at bar, the court finds that Mr. Baron’s testimony would constitute an admission by CSS of contempt of the court’s order. However, the court is precluded from holding CSS in contempt by reason of Family Court Act § 156. Unless and until further legislative action is taken, the court is constrained to find and utilize any alternate remedy available in lieu of its contempt power.
An alternate remedy exists in this case pursuant to Social Services Law § 153-d ("Additional limitations on reimbursement for foster care and preventive services”). This statute denies State reimbursement to local social services districts for foster care costs if they fail to comply with a court order issued pursuant to Family Court Act § 1055 (d), as in the case at bar. (Social Services Law § 153-d [1] [d].) Similarly, failure to timely comply with other legal mandates regarding children in foster care leads to denial of reimbursement by the State for expenses of foster care. (See, for example, Regulations of Dept of Social Servs, 18 NYCRR former 428.13.)
Accordingly, the court finds beyond a reasonable doubt that CSS failed to comply with the court’s order pursuant to Family Court Act § 1055 (d) requiring the filing of a termination petition within 90 days and, therefore, is not entitled to State reimbursement for the expenses of foster care from March 10, 1986, until the date the petition was filed. Accordingly, the New York City Commissioner of Social Services is hereby ordered to return forthwith to the State Department of Social Services any such funds which have been received or are subsequently received for such foster care expenses and to provide the court with proof of compliance with this directive within 60 days hereof.