OPINION OF THE COURT
Jeffry H. Gallet, J.
This contempt proceeding has brought into question the court’s power to punish the Commissioner of Social Services for her failure to commence a proceeding to terminate the parental rights (TPR) to a child as ordered by the court.
PROCEDURAL HISTORY
The child suffers from cerebral palsy and has been diagnosed as being mentally retarded and developmentally delayed. Now seven years of age, she has been placed since 1987 with the Bernard Fineson Developmental Center (Fineson) under the auspices of the State’s Office of Mental Retardation and Developmental Disabilities (OMRDD) and has lived in her present home, under Fineson’s supervision, since 1988.
Martina entered foster care in 1986 as a result of a child protective proceeding against her mother. Her placement lapsed when the Commissioner negligently failed to file a proceeding to have it extended. (Family Ct Act § 1055.) On January 26, 1989, her mother voluntarily re-placed her with the Commissioner.
On March 30, 1989, more than a month after the statutory deadline, the Commissioner filed a proceeding to approve the voluntary placement. (Social Services Law § 358-a.) On July 21, 1989, as part of that proceeding, Judge Michael Gage ordered the Commissioner to commence a TPR within 90 days. It is undisputed that prior to the Law Guardian’s motion to punish the Commissioner for contempt for failure to file a TPR, the Commissioner neither filed a proceeding nor moved to be relieved of Judge Gage’s order.
The Commissioner was subsequently relieved from Judge Gage’s order because, substantially after the period during which she was obligated to file a termination petition, the cause of action for abandonment fell as a result of the resurfacing of the child’s mother. (Social Services Law § 384-b [4] M; [5].)
*50 The Law Guardian moves here to punish the Commissioner for contempt as a result of her failure to timely file a TPR.
STATEMENT OF FACTS
Martina has been in foster care with the Commissioner virtually all of her life. She was born suffering from drug withdrawal symptoms resulting from her mother’s prenatal drug use. Additionally, she suffered burns while in her mother’s care.
When the Commissioner referred her to Fineson, she was a medically frail and emotionally needy child suffering from extreme anger, hyperactivity, sleepiness and fear of loud noises and hot water. However, she had substantially improved by the time the case first came before Judge Gage.
As a result of the Commissioner’s late filing of the petition and the unexplained absence of her caseworker the first time the case came on, by the time the matter was heard by Judge Gage, the child’s voluntary placement was already six months old. On that day, Judge Gage received evidence that the child was doing exceptionally well with a Fineson "family care provider” who was willing to adopt her and further that there had been no contact from either natural parent for more than six months. Judge Gage approved the placement instrument and ordered the Commissioner to file a termination petition by October 21, 1989. That order was not appealed.
OMRDD, Fineson’s parent organization, appeared at the Social Services Law § 358-a hearing as the child’s service provider to give evidence as to her needs. Neither Fineson nor OMRDD are "authorized agenc[ies]” as defined in Social Services Law § 371 (10) (a) and, therefore, could not commence a termination proceeding. The family care provider, who was licensed by Fineson, is not a licensed "foster parent.” The OMRDD child care system does not parallel the provisions of the foster care system. (Mental Hygiene Law § 13.07; 14 NYCRR part 687.) OMRDD, Fineson and the family care provider were merely service providers. The Commissioner, as the child’s legal custodian, had the responsibility for formulating and effectuating the child’s permanency plan. (Social Services Law § 384-b [1].)
A petition was not filed and the cause of action based on the mother’s abandonment of the child fell in May of 1990 when the mother reestablished contact with the Commissioner. (Social Services Law § 384-b [5].) In addition, the Commis *51 sioner admitted that there was no cause of action against the parents for "permanent neglect” because she had negligently failed to exert any effort to "encourage and strengthen the parental relationship”, either before or after Judge Gage’s order. (Social Services Law § 384-b [7] [a].)
As a result of the change of circumstances, the Commissioner was relieved of her obligation to file a TPR on August 16,1990, with the consent of the Law Guardian.
THE LAW
There is no dispute as to the issuance of the order, its clarity or the Commissioner’s knowledge of it. The Commissioner’s half-hearted argument against the legality of the order, an order specifically authorized by statute, to which her lawyer consented and from which she declined to appeal, must be rejected. (See, Social Services Law §392 [6] [c].) A party may not decide the legality of an order. That authority rests exclusively with a reviewing court. (Matter of Balter v Regan, 63 NY2d 630, cert denied 469 US 934 [1984]; Maness v Meyers, 419 US 449 [1975].)
Similarly, it is difficult to deny that the child suffered harm. The Commissioner concedes that the child would be best served by adoption by her "family care provider.” Had the Commissioner filed a TPR within three months as ordered by Judge Gage, or even in nine months, the Commissioner concedes that it is most likely that parental rights would have been terminated and the child adopted. The child has lost, at least for the moment, the ability to escape the limbo of the foster care system. (Matter of Ida Luz M., 131 Misc 2d 1053 [Fam Ct, Richmond County 1986].) As the Law Guardian correctly points out, the harm to her need not be permanent, only real. (Matter of McCormick v Axelrod, 59 NY2d 574 [1983].) Indeed, the Judiciary Law contemplates that a party may be sanctioned without actual loss or injury. (Judiciary Law § 753.) It need only be demonstrated that a party’s right or remedy was impaired, defeated, impeded or prejudiced. (King v Barnes, 113 NY 476 [1889].) That certainly occurred here.
The Commissioner defends this proceeding by putting forth three affirmative defenses: (1) that the Law Guardian has another remedy which precludes a finding of contempt against the Commissioner (Family Ct Act § 156); (2) that it was impossible to perform the task ordered by Judge Gage; and (3) that she did not intend to disobey the order.
*52 Family Court Act § 156 provides that a party may not be held in contempt for a violation of a Family Court order if "a specific punishment or other remedy for such violation is provided in this Act or any other law.” (See, Matter of Murray, 98 AD2d 93 [1st Dept 1983]; Matter of Wilson, 98 AD2d 666 [1st Dept 1983].)
The Commissioner argues that the Law Guardian has a remedy other than moving to hold her in contempt. Citing Social Services Law § 384-b (3) (b), she argues that the Law Guardian could have commenced her own termination proceeding. While it is true that in Matter of Wilson (supra) and Matter of Murray (supra), the Appellate Division found that to be an effective defense against a foster parent moving to punish the Commissioner for contempt, it is not applicable here. The Law Guardian here, unlike the foster parents in those cases, could not have commenced a TPR without a further order from the Family Court. (Social Services Law § 384-b [3] [b].) By the time this motion came before the court, a cause of action against the child’s mother no longer existed. Accordingly, the remedy of the Law Guardian commencing a TPR does not exist and did not exist at any other time.[2]
The Commissioner argues that she did not willfully or intentionally fail to file a termination proceeding, but, rather, that she was negligent and inefficient. While willfulness is a key element of a criminal contempt, a lesser standard applies to civil contempt. (McCormick v Axelrod, supra.) Indeed, a public official is subject to a civil contempt citation and punishment for any neglect or violation of duty, or other misconduct that may or does defeat, impair, impede or prejudice a right or remedy of a party to a civil "action or special proceeding” (Matter of King v Barnes, supra, at 479; Great Neck Pennysaver v Central Nassau Publs., 65 AD2d 616 [2d Dept 1978]; Yalkowsky v Yalkowsky, 93 AD2d 834 [2d Dept 1983]; see also, Judiciary Law § 753; Oppenheimer v Oscar Shoes, 111 AD2d 28 [1st Dept 1985]; Powell v Clauss, 93 AD2d 883 [2d Dept 1983]).
Finally, the. Commissioner argues that she should not be held in contempt because it is currently impossible to perform under the terms of Judge Gage’s order. However, her inability *53 to obey Judge Gage’s order flows directly from her failure to commence the proceeding during the time prescribed by Judge Gage and because of her continuing failure to pursue "diligent efforts” in working with Martina’s parents as required by Social Services Law § 384-b (7) (a). While the inability to comply with the court order may be a defense in a contempt proceeding, it may not be used where the alleged contemnor created her own inability. (United States v Swingline, Inc., 371 F Supp 37 [ED NY 1974].)
DECISION
The Commissioner of Social Services has been grossly negligent in the way in which this child’s case has been handled. Indeed, the Commissioner concedes her negligence and damage to the child. The Family Court is not an appropriate forum for consideration of the extensive damages suffered by this child as a result of the Commissioner’s misfeasance and malfeasance. That jurisdiction is reserved to the Supreme Court. Accordingly, the Law Guardian is appointed as guardian ad litem for the purpose of making an appropriate application to the Supreme Court for herself or another to be appointed guardian for this child to pursue any remedies which may be available. This order is made because her current guardian, the Commissioner, has a clear conflict of interest.
As to the contempt motion, the Law Guardian has established by overwhelming evidence that the Commissioner was aware of the clear and unequivocal order of the Family Court to commence a termination proceeding within 90 days and that the Commissioner failed to obey that order. The Law Guardian has further proven that the child has suffered substantial damage and prejudice to her rights as a result of the Commissioner’s failure to obey the order. Accordingly, I find the Commissioner in contempt of the lawful order of the Family Court and fine her the sum of $250.
The Commissioner is directed to buy a United States savings bond or other obligation of the United States Government, the government of the State of New York or the government of the City of New York, at a cost of $250 in the name of this child, to mature when the child reaches the age of 21 years. The Commissioner is further directed to file with the court and the Law Guardian proof of the purchase of such an instrument within 90 days of service upon her counsel of a copy of this order.
*54 Further, the Commissioner is directed to file a proceeding to review Martina’s foster care placement no later than the first day of September 1991. (Social Services Law § 392.)
This court notes that, in dealing with this child’s placement, the Commissioner failed to file a timely extension of placement under section 1055 of the Family Court Act in the original child protective proceeding; that the Commissioner failed to timely file a petition for approval of the voluntary instrument placing the child in foster care pursuant to Social Services Law § 358-a; and that the Commissioner failed to file a petition pursuant to Social Services Law § 392 in May of 1990 as directed by Judge Gage. Accordingly, this court is concerned that the Commissioner will fail to file a foster care review proceeding as ordered. Therefore, if a foster care proceeding is not timely filed, the Commissioner shall be subject to additional penalties.

. Significantly, although the mother has reestablished contact with the Commissioner, she has not yet begun to plan for the child, nor, at the time of the hearing, had the Commissioner begun to exert diligent efforts to work with her.