OPINION OF THE COURT
Joseph Harris, J.
Defendant appeals from a judgment of the Justice Court of *662 the Town of Bethlehem (Fritts, J.) convicting the defendant after a jury trial of the crime of obstructing governmental administration in the second degree, in violation of section 195.05 of the Penal Law, a class A misdemeanor.
The issue involved is whether or not the police, sua sponte, have the authority to enforce a Family Court order of visitation. The court concludes they do not, but that a Family Court order of visitation can be enforced only through the contempt powers and procedures of the court issuing the order.
The facts are as follows: During the evening hours of August 9, 1985, pursuant to the terms of an Albany County Family Court order of visitation, one Thomas Welsh traveled to the home resided in by his former wife, Anna Marie Lawler, the defendant herein, and their three children. Upon his arrival, and following a brief conversation, Welsh was denied entry to the home by the defendant, and he thereupon sought the assistance of the Bethlehem police to enforce the visitation order.
The Bethlehem police went to the defendant’s home and tried to persuade her to comply with the terms of the visitation order; she refused.
At this point, the defendant was advised by the police that her continued failure to abide by the terms of the visitation order would result in her arrest. Defendant packed a suitcase, and when she attempted peaceably to enter her car with the packed suitcase, and leave with the children, she was summarily arrested by the police and charged by information with obstructing governmental administration in the second degree, in violation of section 195.05 of the Penal Law, a class A misdemeanor.
Penal Law § 195.05 recites as follows: "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act”.
On this appeal, defendant contends that the judgment must be reversed on the grounds that a police officer has no authority to arrest a person for an alleged violation of a Family Court visitation order and the Legislature has not defined the acts as committed by the defendant in refusing to comply with the visitation order to be a crime.
*663 The Court of Appeals, in an opinion entitled Matter of Shannon B. (70 NY2d 458, 462) upholding the authority of New York City police officers to detain suspected truants, citing in part People v De Bour (40 NY2d 210), declared: "As we have noted in another context, the role of the police is not limited to the enforcement of the criminal law. Instead, their role is 'a multifaceted one * * *. Among other functions, the police in a democratic society are charged with the protection of constitutional rights, the maintenance of order, the control of pedestrian and vehicular traffic, the mediation of domestic and other noncriminal conflicts and supplying emergency help and assistance’ (People v DeBour, 40 NY2d 210, 218).”
This broad language might at first blush be construed to be a declaration that substantive police authority in the State of New York is unlimited, except if specifically limited by statute. But upon closer analysis Shannon B. (supra) is not in fact an expansion of the traditional and recognized authority of the police sua sponte to enforce the express criminal laws of the State and statutes proscribing conduct not made criminal. What the police did in Shannon B. (supra) was to enforce a specific statute, the New York State compulsory education laws, even though no specific grant of authority is contained in the Education Law delegating such enforcement power to the police. When the defendant resisted the attempt of the police to detain him for truancy — police conduct recognized by the Court of Appeals in Shannon B. to be included in the official functions of the police — the defendant’s conduct escalated into a violation of the Penal Law, constituting, among others, the crime of obstructing governmental administration.
Thus in the instant case the initial inquiry must be as to whether or not it was an official function of the police to enforce, sua sponte, not a specific statute proscribing certain conduct or affirmatively mandating specific conduct, but a Family Court visitation order.
By analogy, the Court of Appeals recently concluded that, in designing the Tax Law, the Legislature provided an integrated statutory regulation that included a comprehensive scheme of civil and criminal penalties (see, People v Valenza, 60 NY2d 363). There, it was held that the structure of the penalties provision of article 28 of the Tax Law and the Legislature’s failure to deem a withholding of sales tax collected as criminal conduct must be construed as a legislative intention to provide a civil penalty as the exclusive means of prosecuting *664 this conduct. Moreover, the exclusion of such conduct from the criminal penalties section of the Tax Law was deemed to manifest an intent to exclude such conduct from criminal prosecution under either the Tax Law or the Penal Law (People v Walsh, 67 NY2d 747; People v Valenza, supra).
The same reasoning adopted by the Court of Appeals in Valenza (supra) equally applies to the Family Court Act.
For example, article 4 of the Family Court Act, entitled Support Proceedings, sets forth comprehensive procedures for commencement of support proceedings, for determination of child and spouse support, the enforcement of support orders, built around the court’s contempt powers, and further sets forth a comprehensive scheme of penalties, both civil and criminal, for violation of such support orders and subsequent contempt orders. (See, Family Ct Act § 454.)
Under Family Court Act § 428, Family Court is specifically empowered, under certain circumstances, to issue a warrant for the arrest of the respondent when a petition for support has been presented to the court under Family Court Act § 423, and where it appears that personal service of the summons and petition commencing said support proceeding has not been able to be made, or in the court’s opinion such service would be ineffectual, or where the respondent has failed to obey the summons, or is likely to leave the jurisdiction, or where the safety of the petitioner is endangered. This warrant may be given to a police officer and authorizes him to arrest the respondent and take him to court. There is no authorization for an arrest without a warrant.
Family Court Act § 453 (b) provides for the enforcement of Family Court orders by summons and petition, the summons containing a warning "that a failure to appear in court may result in immediate arrest, and that, after an appearance in court, a finding that the respondent willfully failed to obey the order may result in commitment to jail for a term not to exceed six months, for contempt of court.” Subdivision (d) of Family Court Act § 453 provides: "The court may issue a warrant, directing that the respondent be arrested and brought before the court”.
Section 168 (1) of the Family Court Act provides: "In any case in which an order of protection * * * has been made by the family court, the clerk of the court shall issue a copy of such order to the petitioner and respondent * * *. The presentation of a copy of an order of protection * * * to any peace *665 officer, acting pursuant to his special duties, or police officer shall constitute authority for him to arrest a person charged with violating the terms of such order of protection * * * and bring such person before the court and, otherwise, so far as lies within his power, to aid in securing the protection such order was intended to afford”.
There is no comparable provision of the Family Court Act, or elsewhere, with respect to an order of visitation. With respect to orders of visitation, enforcement lies in the contempt powers of the court (see, Judiciary Law §§ 750, 753; Matter of Murray, 98 AD2d 93). And this is wholly reasonable, for violations of orders of protection are fraught with the danger of serious physical harm — the very thing such orders are aimed at preventing — and the prevention of which has always been a traditional and important police function.
Not so with orders of visitation! A violation thereof does not ordinarily give rise to violence. And if it does, at that point the police have the power to intervene — solely for the purpose of stopping or preventing the violence, but not for the purpose of enforcing the order. That is the function of the court above —through its contempt powers. Indeed, a violation of any Family Court order is punishable as a contempt "unless a specific punishment or other remedy for such violation is provided in this act or any other law” (Family Ct Act § 156; Matter of Murray, supra).
Where a visitation order of the Family Court has been violated, it is incumbent upon the aggrieved party to return to that court to gain its enforcement. To coerce compliance with its terms, the issuing court may find the respondent in contempt and impose a monetary fine, term of imprisonment, transfer custody, deny child support, deny maintenance and issue an order of protection (Family Ct Act § 551; see, e.g., Berkman v Berkman, 57 AD2d 542; Matter of Marciano v Marciano, 56 AD2d 735; Joye v Schechter, 118 Misc 2d 403). A party dissatisfied with the manner in which the court enforces its own order of visitation may pursue an appeal.
The range of authorized police activity is broad, but it is not unlimited. All of the police activities enumerated in De Bour (supra), both criminal and noncriminal, are specifically authorized by a statute, or involve a breach of the peace, or arise out of an emergency situation. None of these categories fit a Family Court visitation order. To allow the police on their own, without a specific direction of the court issuing the *666 visitation order, to enforce such order, would seriously disturb the delicate fabric of familial relationships for which the Family Court was created, and was designed to supervise. For example, visitation orders are ofttimes violated because of reciprocal violations of support orders. Are the police to be allowed to pick and choose to which of these familial rights they will give priority? Police are not a civil collecting agency unless specifically directed by a statute or a court. No more are they a sua sponte arbiter of familial relationships unless so directed or unless, at least, a breach of the peace, or an emergency, is imminent.
Since the Family Court Act contains an integrated regulation that includes a comprehensive scheme of both civil and criminal penalties, and an integrated and specifically designed plan for the enforcement of Family Court orders, and for all other reasons stated above, this court holds that the sua sponte enforcement of a Family Court visitation order is not an official police function. Thus a Penal Law charge of obstructing governmental administration may not be used in the first instance as a device to compel the enforcement of a Family Court visitation order.
Although it is not thus necessary to review the other elements of Penal Law § 195.05, the court notes that the interference with the performance of an official function of a public servant that gives rise to a violation of the section, must be "by means of intimidation, physical force or interference, or by means of any independently unlawful act”. This element is completely lacking in the proof in this case. (See, People v Case, 42 NY2d 98.)
Judgment reversed and information dismissed! Case remanded to Bethlehem Justice Court for action consistent with this opinion!