■ In the Matter of DAMION FRIERSON, Appellant, v SHIRLEY GOLDSTON, Respondent. (And Eight Other Related Proceedings.) [779 NYS2d 670]—

Lahtinen, J. Appeals (1) from an order of the Family Court of Rensselaer County (Griffin, J.), entered March 25, 2002, which dismissed petitioner's applications, in five proceedings pursuant to Family Ct Act article 6, to, inter alia, hold respondent in violation of a prior order of visitation, (2) from an order of said court, entered July 28, 2002, which held petitioner in criminal contempt of court, (3) from an order of said court, entered July 30, 2002, which dismissed petitioner's applications, in three proceedings pursuant to Family Ct Act articles 6 and 8, to, inter alia, modify a prior order of custody, and (4) from an order of said court, entered July 30, 2002, which terminated petitioner's visitation rights.

Petitioner and respondent are the parents of a daughter born in August 1999. Shortly after the child's birth, Family Court issued an order, on consent, providing for joint legal custody with respondent having primary physical custody. Commencing in September 2001, petitioner filed a series of petitions over the ensuing months alleging visitation violations and seeking to gain custody. At a March 2002 appearance, upon learning of a recent psychiatric evaluation report of petitioner's mental health condition that he had submitted in a child support hearing, Family Court directed that he sign a release permitting the

Law Guardian and a social worker to speak to the psychiatrist regarding his treatment.* Petitioner, represented by counsel, refused to sign the release and, after being warned by Family Court that his continued refusal would result in dismissal of his pending petitions, petitioner nevertheless refused to sign the release. The petitions were dismissed sua sponte.

Thereafter, in April 2002, petitioner filed three new petitions again seeking to modify custody and a petition alleging a family offense committed by respondent. Respondent thereafter filed a petition alleging a visitation violation by petitioner. On the return date of the petitions, petitioner was assigned counsel. Notably, an investigation by child protective services concluded that the family offense allegations were unfounded. At a court appearance on May 29, 2002, Family Court noted that the psychiatric evaluation of petitioner continued to raise concerns and, again, directed petitioner to sign a release. The court explained that by bringing a custody and visitation petition, petitioner had made his mental health a relevant issue, his continued refusal would be considered contempt, he would be sent to jail and the court would entertain a motion to dismiss his pending petitions with prejudice.

Petitioner next appeared in court on June 12, 2002. Prior to that appearance, his attorney sought permission to withdraw as the attorney of record. The reason for this request is not explained in the record. Without addressing the attorney's application, Family Court inquired whether petitioner had signed the release and learned he had not. Petitioner attempted to interject additional information other than a direct answer to Family Court's questions regarding the release and, in an apparent effort to avoid contempt, advised the court that he wanted to withdraw his petitions. Family Court then marked his petitions as withdrawn and found him in contempt for refusing to sign the release, as well as for interrupting the court and, later, for uttering an obscenity as he was being removed from the courtroom. Petitioner's subsequent request to reinstate his petitions was denied. He was sentenced to a total of 60 days in jail on the findings of contempt. After petitioner was removed from the courtroom, Family Court granted the motion of petitioner's attorney to withdraw and, on the motion of respondent's attorney, terminated all visitation by petitioner, noting that he could re-petition upon signing the release, which

---

* The release form is not part of the record; however, it appears that petitioner was being directed by Family Court to sign a written waiver of his right to confidentiality as set forth in CPLR 4504 (a), also known as the "doctor-patient privilege."

Family Court would view as a sufficient change in circumstances. Petitioner appeals.

We first find merit in petitioner's argument that Family Court erred in terminating his right to visitation. "[T]he primary consideration in deciding the issue of visitation is the best interest of the child" (*Matter of Rogowski v Rogowski*, 251 AD2d 827, 827 [1998]). Visitation by a noncustodial parent is presumed to be in the child's best interest and should be denied only in exceptional situations, such as where substantial evidence reveals that visitation would be detrimental to the welfare of the child (*see Matter of McCrone v Parker*, 265 AD2d 757, 757-758 [1999]). Here, there had never been a plenary hearing on the child's best interest and Family Court's termination decision was made without a hearing. Upon our review of the record, we find that the evidence before the court was insufficient to enable it to conduct the necessary comprehensive independent review of the child's best interest in lieu of a hearing (*see Matter of Davies v Davies*, 223 AD2d 884, 886-887 [1996]). Indeed, there were conflicting allegations from both parents which raise questions about the child's comfort, health and safety. Moreover, Family Court's summary termination of petitioner's visitation rights had not been requested in respondent's petition and occurred after petitioner's attorney had effectively withdrawn from representing petitioner and petitioner made no waiver of his statutory right to counsel (*see Matter of Wilson v Bennett*, 282 AD2d 933, 935 [2001]). Family Court's order terminating petitioner's visitation rights in his absence, without the assistance of counsel and without a hearing, must be reversed and the matter remitted for a hearing.

Petitioner next contends that Family Court erred in finding him in criminal contempt. Criminal contempt can be premised upon, among other things, "[d]isorderly, contemptuous, or insolent behavior" committed in the court's presence or "[w]ilful disobedience" of a court's lawful mandate (Judiciary Law § 750 [A] [1], [3]; *see* Family Ct Act § 156). Initially, we note that, as now acknowledged by petitioner, his uttering of an obscenity in the court's presence following a ruling with which he disagreed provided a basis for a finding of contempt. We do not conclude, however, that this record supports a finding of criminal contempt for petitioner's failure to sign the release regarding his psychiatric treatment. To be sure, petitioner's mental health was clearly a relevant consideration that had been injected into the proceedings by petitioner. By seeking custody or increased visitation, petitioner had effectively waived his privilege regarding such information (*see Matter of Shepard*

*v Roll*, 278 AD2d 755, 757 [2000]; *Ace v State of New York*, 207 AD2d 813, 814 [1994], *affd* 87 NY2d 993 [1996]), thereby rendering any written waiver or consent unnecessary. Under the particular circumstances presented here, it was error for Family Court to resort to the contempt statute when other remedies were available (*see* Family Ct Act § 156; *Matter of Murray*, 98 AD2d 93, 97 [1983]). Family Court could have, among other things, authorized a deposition of the psychiatrist (*see* CPLR art 31; Family Ct Act § 165), permitted the Law Guardian to subpoena the medical records for review and/or the psychiatrist for testimony at trial (*see* CPLR art 23), or ordered a full psychiatric evaluation (*see* Family Ct Act § 251 [a]).

The record reveals that petitioner did not object to his psychiatrist testifying or even being interviewed in his presence. He did not want the Law Guardian and a social worker to discuss his mental health with his psychiatrist outside of his presence. Significantly, petitioner's attorney made no effort to advocate this position, which was not entirely unreasonable as a matter of law, and, in fact, his counsel essentially took a position contrary to that of his client before asking Family Court to relieve him of his assignment. We further find no support in the record for the court's finding of contempt emanating from petitioner's essentially pro se attempts to justify his refusal to sign the release. Accordingly, we hereby reinstate all petitions before the court on June 12, 2002 and remit these matters for further proceedings before another judge and with the assignment of a new counsel, if petitioner qualifies. At the initial appearance the court, if appropriate, shall make a temporary order of visitation between petitioner and the child, if visitation has not at that time been reinstated.

The remaining issues raised by petitioner are either academic or unpersuasive.

Peters, J.P., Spain, Mugglin and Rose, JJ., concur. Ordered that the order entered March 25, 2002 is affirmed, without costs. Ordered that the order entered July 28, 2002 is modified, on the facts, without costs, by reversing so much thereof as held petitioner in criminal contempt for his failure to sign a release regarding psychiatric treatment and for his pro se attempts to address the court, and, as so modified, affirmed. Ordered that the orders entered July 30, 2002 are reversed, on the law, without costs, and matters remitted to the Family Court of Rensselaer County for further proceedings not inconsistent with this Court's decision before a different judge on said pending petitions.